GERALD JOHNSON AND CHESTER P. CUNNINGHAM,
APPELLANTS, V. J. JAMES EXON ET AL., APPELLEES.

256 N. W. 2d 869

Filed August 3, 1977.   No. 41004.

T. Clement Gaughan, Richard L. Goos, and Dennis
R. Keefe of Naylor & Keefe, for appellants.

Paul L. Douglas, Attorney General, Paul W. Sny-
der, and Steven C. Smith, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH,
McCOWN, BRODKEY, and WHITE, JJ., and KUNS, Re-
tired District Judge.

SPENCER, J.

This is a declaratory judgment action to secure
the benefits of Laws 1975, L. B. 567 (sections 83-170,
83-1,107 to 83-1,111, 83-1,118, and 83-1,126.01, R. S.
Supp., 1975), retroactively.   The trial court found
that any attempt to apply L. B. 567 retroactively
would be unconstitutional and void, and dismissed
the petition.   Plaintiffs prosecute this appeal.   The
only issue presented by this appeal is whether L. B.
567 may be applied retroactively.   We find it may
with the approval of the Board of Pardons, and
reverse the judgment of the trial court.

The facts were stipulated.   Plaintiff Johnson was

sentenced on November 29, 1972, to a term of 3 to 4 years in the Nebraska Penal and Correctional Complex, receiving credit for 86 days jail time. He was paroled on February 2, 1976, and at the time of trial was under the supervision of the Board of Parole. Plaintiff Cunningham was sentenced on May 15, 1973, to a term of 5 years in the Nebraska Penal and Correctional Complex, receiving 3 months credit for time spent in jail. At the time of trial he was an inmate of the penal complex.

L. B. 567 became effective August 24, 1975. Section 9 of the act, section 83-1,126.01, R. S. Supp., 1975, provides: "Any person in the custody of the Department of Correctional Services or under supervision of the Board of Parole shall be subject to the provisions of this act. Any person eligible for immediate discharge or release pursuant to this act shall be so discharged or released no later than one hundred twenty days after August 24, 1975 *subject to the approval of the Board of Pardons.*" (Emphasis supplied.)

Plaintiffs had been granted "good time" pursuant to the laws applicable to them at the time they were sentenced. Both plaintiffs had been considered for commutation and both applications had been denied. The State stipulated that if L. B. 567 was applicable to plaintiffs, they would be entitled to immediate release from custody under the provisions of L. B. 567, if approved by the Board of Pardons.

Under the law in effect at the time plaintiffs were sentenced, "good time" credits were applied to determine the date on which an inmate was eligible for parole, and also the date on which the inmate's release on parole became mandatory. § 83-1,107, R. S. Supp., 1974. Section 2 of L. B. 567 (section 83-1,107, R. S. Supp., 1975), provides for good behavior deductions from an offender's minimum term to determine the date of his eligibility for parole and from his maximum term to determine the date when his

discharge from custody of the state becomes mandatory. Meritorious "good time" is not granted. In its stead, section 3 of L. B. 567 (section 83-1,107.01, R. S. Supp., 1975), provides for faithful performance deductions from an offender's maximum term to determine when his discharge from custody of the state becomes mandatory, but not from his minimum term to determine his parole eligibility date. Under the previous law, meritorious behavior "good time" was not forfeitable after an offender was released on parole. All "good time" granted under L. B. 567 is forfeitable.

Article IV, section 13, Constitution of Nebraska, provides: "The Legislature shall provide by law for the establishment of a Board of Parole and the qualification of its members. Said board, or a majority thereof, shall have power to grant paroles after conviction and judgment, under such conditions as may be prescribed by law, for any offenses committed against the criminal laws of this state except treason and cases of impeachment. The Governor, Attorney General and Secretary of State, sitting as a board, shall have power to remit fines and forfeitures and to grant respites, reprieves, pardons, or commutations in all cases of conviction for offenses against the laws of the state, except treason and cases of impeachment. *The Board of Parole may advise the Governor, Attorney General and Secretary of State on the merits of any application for remission, respite, reprieve, pardon or commutation but such advice shall not be binding on them.* The Governor shall have power to suspend the execution of the sentence imposed for treason until the case can be reported to the Legislature at its next session, when the Legislature shall either grant a pardon, or commute the sentence or direct the execution, or grant a further reprieve." (Emphasis supplied.)

The State is not contending that L. B. 567 is unconstitutional. The State merely contends if L. B. 567 is

given the interpretation that plaintiffs propose, then it would be unconstitutional and void. It is the contention of the State that to interpret section 9 of L. B. 567 (section 83-1,126.01, R. S. Supp., 1975) to require retroactive application of L. B. 567 would render the entire act unconstitutional. In other words, the State contends the act is constitutional if applied prospectively, but would be unconstitutional if applied retroactively.

There is no question, it was the legislative intent that section 9 of L. B. 567 (section 83-1,126.01, R. S. Supp., 1975) be applied retroactively. The State, however, overlooks the fact this was to be done within the ambit of the condition imposed by the following words in the last sentence: "subject to the approval of the Board of Pardons."

We assume the State is applying a strict grammatical construction to the words quoted above within the section. Under that construction, all prisoners eligible for immediate discharge or release under L. B. 567 on the effective date of the act could only be released on approval of the Board of Pardons, while persons who would be entitled to release under the provisions of L. B. 567 but on a date after the effective date of the act would not need the approval of the Board of Pardons.

We do not construe the section in that manner. It is obvious that to do so suggests a classification in violation of the Equal Protection Clause of the Constitution. There is no reasonable explanation for requiring approval of the Board of Pardons for prisoners entitled to immediate release on the effective date of L. B. 567, but not requiring it for those who would be entitled to later release.

In construing a statute, it is the duty of this court to give that statute an interpretation which meets constitutional requirements if it can reasonably be done. Scott v. State ex rel. Board of Nursing, 196 Neb. 681, 244 N. W. 2d 683 (1976). Our review of the

legislative history of the act persuades us it was the intent of the Legislature that the words "subject to the approval of the Board of Pardons" should condition the entire section 9 of L. B. 567, Laws of 1975. We so construe it. We hold all prisoners need approval of the Board of Pardons before the provisions of L. B. 567 may be applied retroactively.

As so construed, section 83-1,126.01, R. S. Supp., 1975, is constitutional. The constitutional challenge by defendants is without merit.

The fact that the Board of Pardons has the ultimate power to deny approval negates the argument that section 9 infringes upon the power of the executive branch of government. As retroactive application of the act is ultimately controlled by the Board of Pardons, even if, as the State argues, such release constitutes a commutation of a sentence, it is valid since the Board of Pardons can commute a sentence at any time.

In view of our conclusions, it is not necessary that we discuss the cases cited by the State holding the retroactive application of "good time" laws invalid, because those cases are not in point herein. Article IV, section 13, Constitution of Nebraska, set out heretofore, specifically provides that the Board of Parole may advise the Board of Pardons on the merits of any application for remission, respite, reprieve, pardon, or commutation.

The trial court held any attempt to apply L. B. 567 retroactively was unconstitutional and void, and dismissed the plaintiff's petition. For the reasons stated, we reverse that judgment and remand the cause for the entry of judgment permitting retroactive application with the approval of the Board of Pardons.

REVERSED AND REMANDED.

McCOWN, J., concurring in result only.

In my view Laws of 1975, L. B. 567, is constitutional and may be applied retroactively without the

necessity of any approval by the Board of Pardons. The contention of the State that a statute which directs the discharge of a prisoner for good conduct before the maximum term of his sentence has been served interferes with the power of the judiciary and with the pardoning and commutation powers of the executive branch, if applied retroactively is, in my opinion, unfounded and disregards the history of constitutional and statutory changes in "good time" laws in this state.

Since 1871, this state has had a "good time" law giving prisoners credit for good behavior. See Laws of Nebraska, Eight Session, 1871, p. 79. From 1871 to 1969, that credit was applied to reduce the maximum term of a sentence and required discharge rather than release on parole when time limits had been met. During the same period of time a single Board of Pardons had the constitutional power to grant paroles, pardons, or commutations. As early as 1960 a study prepared for the Legislative Council committee pursuant to a legislative resolution recommended the creation of a permanent board separate from the Board of Pardons to handle paroles. In 1967, the Legislature submitted a constitutional amendment to be placed on the ballot in 1968 which did just that. At least one of the purposes of the amendment was to separate the power to parole for good conduct from acts of mercy or clemency involved in pardons, reprieves, and commutations traditionally vested in the executive branch. See, Hearings on L. B. 561 before the Government and Military Affairs Committee, Seventy-seventh Session, Nebraska Legislature, 1967.

The constitutional amendment was adopted by the electorate in 1968. It provided: "The Legislature shall provide by law for the establishment of a Board of Parole and the qualification of its members. Said board, or a majority thereof, shall have power to grant paroles after conviction and judg-

ment, *under such conditions as may be prescribed by law,* for any offenses committed against the criminal laws of this state except treason and cases of impeachment." Article IV, section 13, Constitution of Nebraska. (Emphasis ours.)

Under the revised provisions of that section of the Constitution the Board of Pardons retained the "power to remit fines and forfeitures, and to grant respites, reprieves, pardons, or commutations in all cases * * *." It seems clear that the constitutional amendment of 1968 authorized the Legislature to prescribe conditions under which the Board of Parole could not only parole prisoners but could also discharge them from custody.

In 1969, the Legislature implemented the constitutional amendment and gave to the Board of Parole, among other things, the power to dispense with and terminate parole guidance or supervision and also to discharge a parolee from parole at any time. Those 1969 statutes maintained the same good time allowances for prisoners in confinement as had been provided under the old law since 1921 and are now provided in L. B. 567, but the 1969 statutes provided for mandatory release on parole rather than the mandatory discharge from custody required by the prior and subsequent statutes. The 1969 statutes also provided for different amounts of good time allowances while a prisoner was on parole than were applicable during the period of confinement; provided for special meritorious allowances; and directed discharge when the time spent in custody and on parole equaled the maximum term, reduced only by parole good time reductions. In 1975, L. B. 567 essentially returned to the pre-1969 system, except that it is now under the administration of the Board of Parole rather than the Board of Pardons. L. B. 567 now requires discharge by the Board of Parole when the time served in custody and on parole equals the maximum term, less all good time reduc-

tions granted, and removes the differences for good time credits on parole and in custody. Basically a prisoner would be entitled to discharge at a somewhat earlier time under L. B. 567 and under pre-1969 law than he would have been under the statutes in effect between 1969 and 1975.

Under statutes effective since 1972, indeterminate sentences have been the rule in virtually all cases in Nebraska. It should be clear that where indeterminate sentences are involved in which there is a maximum and minimum sentence, a discharge after the minimum term has been served cannot be said to constitute a reduction or commutation of any such indeterminate sentence. Under L. B. 567 a prisoner is not even eligible for parole, much less entitled to a discharge, until his minimum sentence has been served.

The State's position here rests on the assumptions that the constitutional amendment of 1968 did not grant any power to the Board of Parole or the Legislature to discharge a prisoner from custody before the maximum term of his sentence, and that any earlier discharge from custody required by statute constitutes a commutation of sentence. Neither assumption is justifiable. Good time laws such as L. B. 567 and its predecessors provide for credit against sentences to be earned by a convict by his own conduct. Those good time credits are forfeitable. The granting of good time credits is not an act of clemency nor mercy, nor does it constitute an interference with the judicial or executive power under the Constitution. The Legislature should, and does, have the power to set and to change the allowance of good time credits and to grant the benefits uniformly to all prisoners who have earned them.

Subject to ex post facto restrictions, the Legislature may, if it wishes, direct that such good time statutes be applied retroactively as well as prospectively. That was done here. There is no valid reason to conjure up a spectre of unconstitutionality to

deny to any prisoners the benefits earned by their own good conduct simply because they were sentenced at the time before the "good time" statute was changed. L. B. 567 is constitutional, both prospectively and retroactively, without being interpreted as requiring the approval of the Board of Pardons.