ELMER R. GOCHENOUR, APPELLANT, V.
JERRY J. BOLIN ET AL., APPELLEES.

303 N.W.2d 775

Filed March 27, 1981. No. 43267.

Dennis R. Keefe, Public Defender, and Richard L. Goos for appellant.

Paul L. Douglas, Attorney General, and J. Kirk Brown for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCown, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

This is an action brought by Elmer R. Gochenour, an inmate of the Nebraska Penal and Correctional Complex, in the District Court for Lancaster County for a declaratory judgment construing the statutes of this state providing for "good time" and to determine whether the Department of Correctional Services (hereinafter DCS) properly computed Gochenour's discharge date. The petition alleged that the DCS unlawfully interrupted his service of an indeterminate sentence for the purpose of having him serve a consecutive sentence subsequently imposed before completing the indeterminate sentence. The petition further alleged that his primary and consecutive sentences were not consolidated in accordance with the provisions of Neb. Rev. Stat. § 83-1,110(2) (Reissue 1976). The petition asks for a declaration that such procedures are unlawful.

The District Court made certain findings and then entered an order as follows:

"THEREFORE, IT IS ORDERED:

"1. The plaintiff must serve his original 3 to 5 year sentence until it has been served in full and he has been discharged therefrom under the statutes in effect at the time of that conviction.

"2. When the plaintiff begins serving his consecutive sentence, he shall receive credit against that sentence for time served from June 4, 1979 to the effective date of this order."

The order was entered on January 15, 1980. Gochenour then appealed to this court.

A simple and clear explanation of the source of the

controversy is not readily accomplished. The problems arise from changes made in the "good time" statutes as well as our holding in *Johnson & Cunningham v. Exon,* 199 Neb. 154, 256 N.W.2d 869 (1977), interpreting 1975 Neb. Laws, L.B. 567, which made the statutory changes.

We will first set forth the facts from which the dispute arises and then explain the statutory changes.

On May 15, 1975, Gochenour began serving a term of 3 to 5 years for forgery. On May 6, 1977, he escaped and was not apprehended until March 3, 1978, 9 months and 27 days after his escape. He was prosecuted for the escape, found guilty, and, on March 3, 1978, sentenced to a term of 1 year to be served consecutively to the previous sentence. Because of his escape he lost, by administrative action, all accumulated good time as permitted by statute. Later, his good time on the 1975 sentence was administratively restored and on January 1, 1979, the DCS established for him a mandatory parole date of June 4, 1979, for the first sentence. This was apparently done under the provisions of Neb. Rev. Stat. §§ 83-1,107(1)(b) and 83-1,111(5) (Reissue 1976) as those statutes provided before their amendment by L.B. 567. L.B. 567 became effective 3 months after May 23, 1975.

On June 4, 1979, he was not released to serve on parole the remainder of his first sentence; rather, that sentence was "interrupted" and he began to serve the 1-year consecutive sentence. On October 2, 1979, he commenced this action.

We now examine the pertinent statutes and the changes made by L.B. 567. At the time of the imposition of the first sentence and at the time the consecutive sentence was imposed, § 83-1,110 provided, in effect, that consecutive sentences be consolidated and that every committed offender sentenced to serve a consecutive sentence, whether the sentences were received at the same time or during the original sentence, would be eligible for release on parole when he had served the total of the *minimum terms* less good time as provided

by the statutes. § 83-1,107. Section 83-1,110 also provided that "[t]he maximum terms shall be added to compute the new maximum term." The prisoner was eligible for *mandatory parole* when he had served the maximum term less good time reductions. § 83-1,107.

L.B. 567 did not make any change in the provisions of the statute for consolidation of sentences. It did, however, make changes with reference to "good time."

Statutes, at the time Gochenour received his first sentence, provided for two types of good time which we will refer to as "good behavior" and "meritorious" good time (although the terminology was changed by L.B. 567). Before L.B. 567 took effect, good time credit of both types was deducted from the minimum terms to determine *eligibility* for release on parole, and from the maximum terms to determine when release on parole became *mandatory*.

When L.B. 567 became effective in August 1975 it made the following changes in how good time reductions were treated. "Good behavior" time but not meritorious time was now deducted from the minimum term to determine eligibility for release on parole as well as from the maximum term to determine when the *discharge from custody* of the state became mandatory. L.B. 567 § 2. The reductions were to be credited from the date of sentence. Meritorious good time was credited only against the maximum term to determine when *discharge from custody* became mandatory.

The effect of these changes would be that in some instances *discharges from custody* would come at an earlier date.

Section 9 of L.B. 567 provided in part: "Any person eligible for immediate discharge or release pursuant to this act shall be so discharged or released no later than one hundred twenty days after the effective date of this act subject to the approval of the Board of Pardons."

The Legislature, apparently through oversight, made no specific provision as to how reductions granted for one purpose under previous law were to be blended with

reductions granted under L.B. 567 for a different purpose.

*Johnson & Cunningham v. Exon,* 199 Neb. 154, 256 N.W.2d 869 (1977), was an action by two inmates of the Nebraska Penal and Correctional Complex who, it was stipulated, were eligible for mandatory release if L.B. 567 were applied retroactively. We held in that case that, if L.B. 567 was applied so as to give inmates eligible for immediate release the benefit of the bill and not to benefit those who became eligible for later release, it would create a discriminatory classification and also violate the equal protection clause of our Constitution. We, therefore, interpreted the act to apply not only to inmates eligible for immediate release but those becoming eligible later under the terms of the act, provided in each case the approval of the Board of Pardons was received as provided by section 9 of L.B. 567. This interpretation negated the State's contention that retroactive application constituted a commutation of sentence and thus violated the constitutional powers of commutation vested in the executive branch of government. Neb. Const. art. IV, § 13.

The record before us does not establish that approval of the Board of Pardons has been received for retroactive application in this case. The record shows that Gochenour had hearings before the Board of Parole on May 11, 1978, May 11, 1979, and September 10, 1979, and that action was deferred in each instance.

In *Johnson & Cunningham v. Exon, supra,* we painted with a rather broad brush and we believe that has led to some misconception as to its holding. That decision can be properly interpreted only in the light of the facts in that case where it was stipulated that the petitioners become eligible for earlier discharge because of the *changes* in the statutes. Our holding, that failure to apply L.B. 567 retroactively would result in discriminatory classifications and denial of equal protection, patently pertained only to those changes in the statute which would result in earlier release than under existing laws.

The provisions for consolidation of consecutive sentences were not in any way changed. Those provisions are to be applied whether sentencing was before or after the effective date of L.B. 567. That appears not to have been done in this case. In sum, after the imposition of the 1-year consecutive sentence, its consolidation with the 3- to 5-year indeterminate sentence resulted in a 4- to 6-year consolidated term and should have been so treated. The approval of the Board of Pardons was not sought or received in this case, so the pre-L.B. 567 good time provisions should have been applied. Because Gochenour had hearings before the Board of Parole on May 11, 1978, May 11, 1979, and September 10, 1979, and early parole was denied, he has not been hurt with reference to the date he became *eligible for parole* for that date obviously occurred later because of the consolidation of sentences. His mandatory parole date also obviously occurred at a date later than June 4, 1979, determined by the DCS — 8 months later if no good time of any kind was forfeited and he earned the maximum meritorious time.

The State argues that if the DCS cannot interrupt a sentence for the purpose of having a consecutive term served, it might result in some instances, where early parole is granted, in having to retrieve the person when parole has been served and then reincarcerating him for the purpose of serving the consecutive sentence. That would not appear to be true if the statutes on consolidation are followed.

The DCS had no authority to interrupt the first sentence for the purpose of serving the second. No such authority appears in the statutes and it is apparently not an inherent power. See *Perkins v. Peyton*, 369 F.2d 590 (4th Cir. 1966).

We cannot compute any of the pertinent dates because the record does not contain information as to whether good time may have been forfeited after the period covered by the record in this case ends.

AFFIRMED IN PART AND REMANDED FOR FURTHER PROCEEDINGS IF THEY BE REQUESTED.