ROBERT EUGENE WHITED, APPELLANT, V.
JERRY J. BOLIN ET AL., APPELLEES.

312 N.W.2d 691

Filed November 25, 1981. No. 43944.

Dennis R. Keefe, Lancaster County Public Defender, and Richard L. Goos for appellant.

Paul L. Douglas, Attorney General, and J. Kirk Brown for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

This is a habeas corpus proceeding in which the petitioner sought immediate release from penal custody of the State of Nebraska. The District Court dismissed the petition and this appeal followed.

In January 1967 the petitioner commenced serving a 10-year sentence for burglary in the custody of the Department of Correctional Services. On February 1,

1973, the petitioner was sentenced to a term of not less than 3 nor more than 10 years for burglary, to be served consecutively to the 1967 sentence. The first sentence was terminated by the state on August 19, 1973, and on that date petitioner began serving the second term.

In 1975, L.B. 567 became effective. L.B. 567 made changes in the application of "good time" and "good behavior" good time credits, both for purposes of determining eligibility for release on parole and for purposes of determining the time of mandatory discharge from custody.

On September 13, 1978, the petitioner was granted a discretionary parole. On November 18, 1978, petitioner was convicted and fined in the municipal court of Lincoln, Nebraska, on a charge of refusing a breath test. It is stipulated that on December 13, 1978, the Board of Pardons denied the petitioner the application of good time benefits under L.B. 567. The petitioner did not receive prior notification of the board meeting, nor have any opportunity to be heard. On December 19, 1978, petitioner's discretionary parole was revoked and he has remained in custody.

Petitioner's habeas corpus petition was filed on July 20, 1979. The petition alleged that he had been denied his statutory rights to good behavior good time credits in violation of law and had also been denied his constitutional right to due process and equal protection of the law. He alleged that he was entitled to immediate release from custody. The State's response alleged that the petitioner had violated a discretionary parole within 12 months of the date when his parole would otherwise have been mandatory and that the petitioner was not entitled to the retroactive application of 1975 Neb. Laws, L.B. 567.

On September 10, 1980, the District Court found that *Johnson & Cunningham v. Exon*, 199 Neb. 154, 256 N.W.2d 869 (1977), requires the approval of the Board of Pardons before an inmate may enjoy "the more liberal good time benefits afforded by LB 567," and also

found that as to the action of the Board of Pardons petitioner's right to due process of law had not been violated, and dismissed his petition.

In *Johnson & Cunningham v. Exon, supra,* this court determined that where petitioners became eligible for earlier discharge under L.B. 567 than would have resulted under laws existing at the time of sentencing, approval of the Board of Pardons was required before the provisions of L.B. 567 could be applied retroactively. The basis for the holding was that an earlier discharge constituted a form of clemency or commutation of sentence which only the Board of Pardons had the power to exercise.

In *Gochenour v. Bolin,* 208 Neb. 444, 303 N.W.2d 775 (1981), this court held that approval of the Board of Pardons to apply L.B. 567 retroactively is required only where the changes in L.B. 567 would result in discharge of the prisoner from custody at an earlier date than under the law in effect prior to L.B. 567.

At this point it is necessary to point out that since 1969 the maximum amounts of "good time" allowances and of "meritorious" or "faithful performance" good time allowances have been exactly the same, except that L.B. 567 provided that an offender *"shall* receive, for faithful performance of his assigned duties," 5 days for each month of his term, while prior law provided that an offender *may* receive a reduction not to exceed 5 days for any month of imprisonment. (Emphasis supplied.) In the usual situation the amount of good time allowances is the same under L.B. 567 and prior law, and has been since 1969.

The only essential difference in the usual case is that L.B. 567 requires the good time reductions to be deducted from the maximum term to determine the date when the prisoner's discharge from the custody of the state becomes mandatory, while prior law requires such reductions to be deducted from the maximum term to determine the date when the prisoner's release under supervision becomes mandatory. In the usual case the

prisoner is required to be discharged from custodial confinement at the same time under either law.

Where a petitioner, under a sentence imposed prior to August 24, 1975, has been granted good time credits which remain unforfeited, sufficient under prior law to require his mandatory release from the custody of the Department of Correctional Services under supervision on the same date or prior to the date when his discharge from the custody of the state would have become mandatory under the provisions of 1975 Neb. Laws, L.B. 567, consent of the Board of Pardons is not required to apply the provisions of L.B. 567 retroactively.

In the case at bar, however, the facts establish that the petitioner violated the terms of a discretionary parole in November 1978 at a time when his mandatory parole under prior law was November 14, 1979. The law in effect at the time of sentencing and under which the mandatory parole date had been computed provided: "Nothing herein shall require the mandatory parole of an offender who has violated a discretionary parole within twelve months of the date when his parole would otherwise be mandatory." Neb. Rev. Stat. § 83-1,111(5) (Cum. Supp. 1974). The record, therefore, establishes that the petitioner would be released from custodial confinement under the application of the provisions of L.B. 567 at an earlier date than he would have been under the prior law in effect at the time of his sentencing. The approval of the Board of Pardons was therefore required to apply L.B. 567 retroactively.

It is quite clear that the actions of the Board of Pardons in allowing or denying the benefits of L.B. 567 constitute an exercise of its power to grant clemency or commutation rather than the revocation of clemency or commutation previously granted. The exercise or non-exercise of a discretionary power to grant clemency is not subject to ordinary due process requirements. See, for example, *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979). It should be noted here that the action or inaction of the Board of

Pardons in the present situation is separate and distinct from any action or inaction of the Board of Parole under the provisions of L.B. 567. Petitioner does not raise any due process issue with respect to the action of the Board of Parole in this case, nor do we pass on such issues here.

Finally, the petitioner contends that the District Court erred in failing to require the respondents to compute the prison terms of the petitioner in accordance with Neb. Rev. Stat. § 83-1,110(2) (Reissue 1976). That section provides: "Every committed offender sentenced to consecutive terms, whether received at the same time or at any time during the original sentence, shall be eligible for release on parole when he shall have served the total of the minimum terms, less reductions granted in accordance with the provisions of this act. The maximum terms shall be added to compute the new maximum term, which, less reductions granted in accordance with the provisions of this act, shall determine the date when his discharge from the custody of the state becomes mandatory." In *Gochenour v. Bolin,* 208 Neb. 444, 303 N.W.2d 775 (1981), this court held that the provisions of § 83-1,110(2) are to be applied to consecutive sentences whether imposed before or after the effective date of L.B. 567.

The record in the present case shows that the state did not combine the minimum and maximum terms of the two prison sentences as required by that section, but it also shows that the first of the two sentences was terminated on August 19, 1973, and that on that date the petitioner began serving the second term. If the sentences had been combined as required by law it is obvious that the termination of the first 10-year sentence would operate as credit of 10 years upon the combined maximum term of 20 years. For all practical purposes the only issue here is whether the good time provisions for the first 3 years following August 19, 1973, were computed on the basis of the commencement of a new term or as a continuation of the combined term. The record does not disclose that information. Neither

does the record show that any action was ever taken to forfeit any of petitioner's good time credits, either before or after December 19, 1978, the date when petitioner's discretionary parole was revoked.

The case is therefore affirmed in part and in part remanded to the District Court with directions to require respondents to combine the minimum and maximum terms of petitioner's sentences in accordance with § 83-1,110(2), and to compute the amounts of good time credited or forfeited, and to determine the date for mandatory release from custodial confinement.

AFFIRMED IN PART, AND IN PART REMANDED WITH DIRECTIONS.