JOHNNY BOSTON ET AL., APPELLANTS, V. CHARLES BLACK, WARDEN, NEBRASKA STATE PENITENTIARY, ET AL., APPELLEES.
STEVEN G. HURLEY, APPELLANT, V. CHARLES L. BENSON, DIRECTOR, DEPARTMENT OF CORRECTIONAL SERVICES, ET AL., APPELLEES.

340 N.W.2d 401

Filed November 18, 1983. Nos. 83-134, 83-135, 83-136, 83-137, 83-138, 83-186.

Dennis R. Keefe, Lancaster County Public Defender, and Richard L. Goos, for appellants.

Paul L. Douglas, Attorney General, and J. Kirk Brown, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

These consolidated appeals question the method of awarding good time credits to committed offenders. They result from the denials of applications for writs of habeas corpus filed by the relators-appellants Johnny Boston, Larry Glouser, and David Moreno; from unfavorable declaratory judgments and denials of writs of habeas corpus to the plaintiffs-appellants Sandy P. Kerns and Michael J. La-Freniere; and from a declaratory judgment unfavorable to plaintiff-appellant Steven G. Hurley. We affirm in all respects.

It seems appropriate to begin this analysis with a historical review.

In 1975 the Eighty-fourth Legislature enacted L.B. 567, which became effective on August 24, 1975. L.B. 567 made changes in Neb. Rev. Stat. §§ 83-1,109 and 83-1,118 (Reissue 1971) and §§ 83-170, 83-1,107, 83-1,108, 83-1,110, and 83-1,111 (Cum. Supp. 1974), and added §§ 83-1,107.01 and 83-1,126.01 (Reissue 1981). The prior provisions of the above-cited amended sections of the statutes were, for the most part, codifications of L.B. 1307 of the Eightieth Legislature. 1969 Neb. Laws, Ch. 817, p. 3071.

L.B. 1307 provided, in relevant part, that a committed offender's term was to be credited 2 months on the first year of the sentence for good behavior and faithful performance of duties, 2 months on the second year, 3 months on the third year, and 4 months for each succeeding year. § 83-1,107 (Cum. Supp. 1974). Hereinafter, we refer to this kind of good time as "regular good time." In addition, dis-

cretionary authority was given to the chief executive officer of the incarcerating facility to credit the offender's sentence by up to 5 days each month for especially meritorious behavior or exceptional performance of duties while incarcerated. *Id.* Hereinafter, we refer to this latter kind of good time as "meritorious good time." The phrase "good time" refers to both regular and meritorious good time. These good time credits were applied to an offender's minimum term to reach a date on which he became eligible for discretionary parole and reduced the maximum sentence to determine a date when his parole became mandatory. *Id.* Under L.B. 1307's scheme, even after release on mandatory parole, the offender was subject to the authority of the Board of Parole until the expiration of his total maximum sentence or earlier release by said board from such obligation. § 83-1,118 (Reissue 1971).

Under the provisions of L.B. 567, regular good time, in the same amounts as indicated previously, is calculated on the basis of the offender's total sentence and credited at the start of his term. The amount of such time to be credited is the same as it was under L.B. 1307. § 83-1,107 (Reissue 1981). In addition, 5 days of meritorious good time for faithful performance of duties is to be credited to the offender's sentence for each month of his sentence. § 83-1,107.01 (Reissue 1981). That is to say, L.B. 567 took away the discretion prison officials had under L.B. 1307 in the potential 5-day award. *Id.* Under L.B. 1307, *up to* 5 days *could* be awarded for exceptional performance or especially good behavior. Under L.B. 567, 5 days *shall* be awarded for faithful performance of duties during the term of the sentence, regardless of whether the offender remains incarcerated during the term. *Id.* L.B. 567 regular good time is to be deducted from the minimum sentence to reach a discretionary parole date, and deducted from the maximum sentence to determine the date on which the offender is to be absolutely

discharged from the state's penal authority. § 83-1,107 (Reissue 1981). L.B. 567 meritorious good time is to be deducted solely from the maximum sentence to determine that absolute discharge date. § 83-1,107.01 (Reissue 1981). In other words, there is no mandatory parole under the scheme of L.B. 567. L.B. 567 does not state whether meritorious good time is to be credited in a lump sum when beginning to serve the sentence, or credited on a monthly basis. *Id.* The Department of Corrections credits the meritorious good time contemplated by L.B. 567 in a lump sum at the beginning of the sentence. It does not so credit the meritorious good time contemplated by L.B. 1307.

In summary, then, any and all good time credited under L.B. 567 serves to shorten an offender's sentence in the sense that when his release from incarceration is mandated, he is no longer subject to the authority of the Department of Correctional Services or the Board of Parole. Any and all good time credited under L.B. 1307 serves only to shorten an offender's period of incarceration in the sense that when his release from incarceration becomes mandatory, he remains subject to the authority of the Board of Parole until the term of his maximum sentence has expired, or he is earlier relieved of that obligation by the Board of Parole. § 83-1,118 (Reissue 1971).

Both L.B. 1307 and L.B. 567 provide for the forfeiture, withdrawal, and restoration of good time. § 83-1,107 (Cum. Supp. 1974 and Reissue 1981) and § 83-1,107.01 (Reissue 1981). Under both schemes any consecutive terms an offender receives while incarcerated are to be consolidated with any other sentence by adding the minimum terms together and adding the maximum terms together. § 83-1,110 (Cum. Supp. 1974 and Reissue 1981).

This court has dealt with the provisions of L.B. 567 on four prior occasions.

In *Johnson & Cunningham v. Exon*, 199 Neb. 154,

256 N.W.2d 869 (1977), this court held that since L.B. 567 reduced the sentence imposed, its good time sentence reduction provisions could constitutionally be applied retroactively only with the approval of the Board of Pardons, in view of the fact that our Constitution lodged the power "to grant respites, reprieves, pardons, or commutations" in said board.

The next case, *Lytle v. Vitek*, 203 Neb. 825, 280 N.W.2d 654 (1979), presented an offender who had been incarcerated before the effective date of L.B. 567 and who was granted a discretionary parole in 1976. His meritorious good time earned under L.B. 1307 was forfeited after his return to prison. He argued that L.B. 1307 meritorious good time earned prior to parole could not be forfeited upon reincarceration. § 83-1,107 (Cum. Supp. 1974). That prohibition against the forfeiture of meritorious good time was repealed by L.B. 567. We held that reliance upon that repealed statutory language was unfounded.

We next considered retroactive application of L.B. 567 in *Gochenour v. Bolin*, 208 Neb. 444, 303 N.W.2d 775 (1981). Gochenour was sentenced, prior to the enactment of L.B. 567, to a 3- to 5-year term. In 1978 he was sentenced to a consecutive 1-year term for escape. In 1979, when he would have reached his mandatory parole date for the first sentence, the Department of Corrections interrupted the initial sentence and he began to serve his 1-year consecutive sentence. This court held that both L.B. 1307 and L.B. 567 required the sentences to be consolidated, and since Board of Pardons approval for retroactive application of L.B. 567 good time sentence reduction provisions had not been sought, pre-L.B. 567 good time crediting provisions should be applied to his total consolidated sentence.

In *Whited v. Bolin*, 210 Neb. 32, 312 N.W.2d 691 (1981), the offender started serving a 10-year sentence in 1967. In 1973 he was given a 3- to 10-year sentence to be served consecutively to the 1967 sen-

tence. The first sentence was terminated in 1973, and the offender then began serving the 1973 sentence. He violated parole in 1978 and was returned to custody. This court held, as in *Gochenour*, that the two sentences should have been consolidated in order to compute the date of mandatory release from the state's penal authority, after accounting for all good time credited or forfeited. If the good time sentence reduction provisions of L.B. 567 had been applied to Whited's sentence, he would have been entitled to discharge from the penal authority of the state at an earlier time than under L.B. 1307; therefore, he needed Board of Pardons approval for the retroactive application of those L.B. 567 provisions.

We divide the offenders involved in the appeals presently before us into two separate groups. The first group is composed of those sentenced prior to the effective date of L.B. 567 who have incurred no additional sentences after that date and have been denied L.B. 567 good time sentence reductions. The second group consists of those sentenced prior to L.B. 567 who have committed crimes and incurred sentences after L.B. 567 became effective.

The first group consists of Boston, Glouser, and Moreno, all of whom seek writs of habeas corpus.

On October 29, 1970, Boston was sentenced to a term of imprisonment of 10 to 15 years. He was placed on parole in 1978, violated the terms of his parole in 1979, and was reincarcerated in 1980.

On February 24, 1975, Glouser was sentenced to imprisonment for a term of 10 years. In July of 1981 he was paroled and was reincarcerated in March of 1982 for violating parole.

On December 27, 1973, Moreno was sentenced to consecutive prison terms of 3 years and 3 to 9 years. The trial court determined his total term to be 6 to 12 years. He was placed on parole in July of 1979 and again in October of 1981. Each time he violated the terms of his parole and was reincarcerated.

Statements in the briefs that Boston is the only one

of the group who has not had a sentence imposed upon him after the effective date of L.B. 567 are not supported by the record. According to the record, Boston, Glouser, and Moreno were all sentenced prior to August 24, 1975, and have not incurred any additional sentences since that date.

The remaining three offenders, all of whom were sentenced to terms of imprisonment both before and after the effective date of L.B. 567, seek a declaration that they are entitled to have their sentences reduced under the good time provisions of L.B. 567. In each instance the trial court found their sentences were controlled by L.B. 1307.

On May 31, 1972, Hurley received a 6- to 8-year sentence; on December 26, 1972, he received a consecutive 1-year sentence; and on February 23, 1977, he received a consecutive 10-year sentence. This 10-year sentence was for a crime worth a penalty of from 1 to 20 years. Under Neb. Rev. Stat. § 83-1,105(2) (Cum. Supp. 1974 and Reissue 1981), it operates as a sentence of from 1 to 10 years. His total consolidated sentence was determined by the trial court to be from 7 to 19 years. It is in fact 8 to 19 years. The Board of Pardons has denied him L.B. 567 good time sentence reductions.

On April 25, 1975, Kerns received concurrent sentences of 10 years and 5 to 10 years. On March 2, 1978, he received a consecutive sentence of 12 to 15 years. The trial court found his consolidated sentence to be 17 to 25 years. He has never been granted a parole. The Board of Pardons has denied him L.B. 567 good time sentence reductions. In addition to seeking a declaration of the law, he seeks a writ of habeas corpus.

On May 14, 1973, LaFreniere received a sentence of from 3 to 9 years. On July 16, 1975, he received a consecutive sentence of 2 years. This sentence is a 1- to 2-year sentence under § 83-1,105(2) (Cum. Supp. 1974 and Reissue 1981). On September 9, 1975, he received a concurrent sentence of 1 year. He was

placed on parole in 1978, giving him the opportunity to commit crimes resulting in two consecutive sentences of 3 to 5 years. The trial court found his total term to be 11 to 22 years. No showing that he has been granted or denied L.B. 567 good time sentence reductions by the Board of Pardons is contained in the record. LaFreniere also seeks a writ of habeas corpus.

The offenders' assignments of error may be summarized into claims that the trial court erred by finding that their sentences were governed by the good time accumulation provisions of L.B. 1307 instead of the good time sentence reductions of L.B. 567 because: (1) The use of a repealed law to determine their good time rights deprives them of liberty without due process of law; and (2) The different treatment of offenders resulting from the application of L.B. 1307 to determine the good time rights of offenders serving terms composed of sentences imposed both before and after the effective date of L.B. 567 and that resulting from the application of L.B. 567 to offenders serving terms composed of sentences imposed solely after the effective date of L.B. 567 embodies a denial of equal protection of the law.

For their due process claim the offenders cite us to *Walker v. Sauvinet*, 92 U.S. 90, 23 L. Ed. 678 (1875), an early civil rights case. Therein, Walker, a licensed keeper of a coffeehouse, had refused to serve Sauvinet, in violation of a Louisiana statute, on the ground the latter was a "man of color." After a jury could not agree to a verdict, Sauvinet moved that the judge decide the case pursuant to a statute providing for such disposition. Walker objected on the ground that the statute was unconstitutional, but did not specify in what particular. In affirming the trial judge's judgment for Sauvinet against Walker, the U.S. Supreme Court held that due process of law is met if the trial had was in accordance with the settled course of judicial proceedings. Since Louisiana had determined that the pro-

ceeding complied with state law, and there being no contrary federal requirement, due process had been accorded. Although the offenders herein cite *Walker* to support their claim that once a law is repealed the use of that law for any purpose is a denial of due process, we frankly fail to see how the case either supports their position or applies to the issues at hand.

In the case of *Weaver v. Graham*, 450 U.S. 24, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981), the U.S. Supreme Court decided that the retroactive application of a Florida statute which provided a new good time scheme under which regular good time credits were lessened was constitutionally inapplicable to a prisoner whose crime occurred before the statute's effective date. Justice Rehnquist stated in his concurring opinion at 38-39: "Since the availability of new opportunities for discretionary gain time and the reduction in the amount of automatic gain time can be viewed as a total package, it must be emphasized that nothing in today's decision compels Florida to provide prisoners in petitioner's position with the benefits of the new provisions when this Court has held that Florida may not require such prisoners to pay the price. It is not at all clear that the Florida Legislature would have intended to make available the new discretionary gain time to prisoners earning automatic gain time under the old 5-10-15 formula, when the legislature in fact reduced the 5-10-15 formula when it enacted the new provisions. The question is, of course, one for Florida to resolve."

The specific due process contentions of the second group of offenders are that since they were sentenced to additional time after the enactment of L.B. 567, their terms should be governed by the good time sentence reduction provisions of L.B. 567 automatically, without Board of Pardons approval.

Section 83-1,110 (Cum. Supp. 1974 and Reissue 1981) defines an offender's sentence, for the purpose

of good time computations, to be the sum of all sentences he receives, regardless of when incurred. The date of an offender's initial incarceration is the date on which service of such consolidated sentence is deemed to begin. Consequently, any good time credited toward the consolidated sentence of an offender sentenced prior to the effective date of L.B. 567 which would reduce the period such offender is to remain subject to the penal authority of the state (but for L.B. 567) would result in the commutation of a sentence by legislative action. This is a power denied to the Legislature by this state's Constitution. See *Lytle v. Vitek*, 203 Neb. 825, 280 N.W.2d 654 (1979).

In *Gochenour v. Bolin*, 208 Neb. 444, 449, 303 N.W.2d 775, 778 (1981), we said: ''The provisions for consolidation of consecutive sentences were not in any way changed. Those provisions are to be applied whether sentencing was before or after the effective date of L.B. 567. That appears not to have been done in this case. In sum, after the imposition of the 1-year consecutive sentence, its consolidation with the 3- to 5-year indeterminate sentence resulted in a 4- to 6-year consolidated term and should have been so treated. The approval of the Board of Pardons was not sought or received in this case, so the pre-L.B. 567 good time provisions should have been applied.'' We restated that rule in *Whited v. Bolin*, 210 Neb. 32, 312 N.W.2d 691 (1981).

The offenders state in their brief at 22: ''The use of repealed statutes at the subsequent offense convictions of these plaintiffs, for the purpose of determining their good time rights, hardly comports with that idea of due process.'' The fact of the matter is that application of the law embodied in L.B. 1307 to determine offenders' good time rights took place not at the time they were convicted of the subsequent offenses but at the time they began serving their initial sentences.

As such, the due process claims of all the offenders are without persuasive force.

We next turn to the equal protection claims. While not spelled out in their arguments, all the offenders herein appear to be referring to the fact that they are treated differently than persons sentenced after the effective date of L.B. 567. This equal protection argument has been rejected in numerous other jurisdictions. *Mastracchio v. Superior Court*, 98 R.I. 111, 200 A.2d 10 (1964), *cert. denied* 379 U.S. 852, 85 S. Ct. 96, 13 L. Ed. 2d 55; *Frazier v. Manson*, 176 Conn. 638, 410 A.2d 475 (1979); *In re Stinnette*, 94 Cal. App. 3d 800, 155 Cal. Rptr. 912 (1979). It is clear from those cases and from *McGinnis v. Royster*, 410 U.S. 263, 93 S. Ct. 1055, 35 L. Ed. 2d 282 (1973), a case dealing with the denial of good time credits to certain prisoners for time spent during presentence incarceration in county jails, that the standard of review in equal protection cases involving denial of good time is not that of strict scrutiny, even though the offenders in the present case have framed the issue as one involving a fundamental interest. As stated in *McGinnis* at 269-70: "We note, further, that the distinction of which appellees complain arose in the course of the State's sensitive and difficult effort to encourage for its prisoners constructive future citizenship while avoiding the danger of releasing them prematurely upon society. The determination of an optimal time for parole eligibility elicited multiple legislative classifications and groupings, which the court below rightly concluded require only some rational basis to sustain them. *James v. Strange*, 407 U.S. 128, 140 (1972); *Lindsey v. Normet*, 405 U.S. 56, 73-74 (1972); *Schilb v. Kuebel*, 404 U.S. 357 (1971); *Dandridge v. Williams*, 397 U.S. 471, 487 (1970). Appellees themselves recognize this to be the appropriate standard. For this Court has observed that '[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscien-

tific.' *Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61, 69-70 (1913). We do not wish to inhibit state experimental classifications in a practical and troublesome area, but inquire only whether the challenged distinction rationally furthers some legitimate, articulated state purpose. We conclude that it does."

Certainly, the preservation of the separation of governmental powers embedded in our state Constitution is a legitimate interest rationally promoted by denying retroactive application of the L.B. 567 good time sentence reduction provisions to those serving sentences imposed prior to its effective date.

The second group of offenders also argue that treating those sentenced prior to the effective date of L.B. 567 who receive additional sentences after such effective date differently than those sentenced for the first time after its effective date is constitutionally impermissible as a denial of equal protection of the law.

The question is whether the difference in treatment is based upon some rational justification. As stated previously, due to the consolidation of all sentences required under both L.B. 1307 and L.B. 567, after that consolidation it is not possible to distinguish pre-L.B. 567 terms from post-L.B. 567 terms. Consequently, application of the L.B. 567 good time sentence reduction provisions serves to reduce the term an offender spends subject to the penal authority of the state. Application of those L.B. 567 provisions to offenders first sentenced prior to its effective date is impermissible, under the Constitution of this state, without Board of Pardons approval. *Johnson & Cunningham v. Exon*, 199 Neb. 154, 256 N.W.2d 869 (1977). Preservation of our government's constitutional separation is a rational, if not compelling, reason for the different treatment accorded those first sentenced prior to and those first sentenced subsequent to the effective date of L.B. 567.

We also note that the application of the rule this second group of offenders request, that once an offender commits a crime while subject to the penal authority of the state he is automatically entitled to a more liberating good time scheme, could have the effect of encouraging the commission of crimes in order to receive the desired L.B. 567 good time provisions.

The due process and equal protection claims of Boston, Glouser, and Moreno are without merit. Their cases are governed by *Johnson & Cunningham v. Exon*, *supra*, wherein we required Board of Pardons approval prior to retroactive application of the L.B. 567 good time sentence reduction provisions, and were correctly decided by the trial court.

The due process and equal protection claims of the second group of offenders, Hurley, Kerns, and LaFreniere, are likewise unpersuasive, and their cases fall within the rule announced in *Gochenour v. Bolin*, 208 Neb. 444, 303 N.W.2d 775 (1981), wherein we held that application of the L.B. 567 good time sentence reduction provisions to the term of an offender similarly situated to these three required prior Board of Pardons approval.

Due process and equal protection issues aside, both groups of offenders also take issue with the Department of Correctional Services' manner of crediting L.B. 567 meritorious good time. As stated earlier, those whose sentences are governed by L.B. 567 good time sentence reduction provisions receive a lump-sum credit for the meritorious good time when they begin serving their sentences. The offenders herein claim that this "banking" of L.B. 567 meritorious good time is improper. Their argument seems to be motivated by dicta in our opinion in *Whited v. Bolin*, 210 Neb. 32, 312 N.W.2d 691 (1981), wherein it was suggested that there may be a situation in which L.B. 567 good time sentence reduction provisions could be applied to offenders who began serving their terms of imprisonment prior to the ef-

fective date of L.B. 567 without first obtaining Board of Pardons approval. Since L.B. 567 good time sentence reduction provisions serve to reduce the time an offender is subject to the penal authority of the state, application of such L.B. 567 good time provisions to any offender serving a term of imprisonment beginning prior to its effective date must be accompanied by Board of Pardons approval.

The offenders' reliance upon the dicta in *Whited v. Bolin, supra,* is misplaced. The facts of the cases before us come squarely within the holdings of *Johnson & Cunningham v. Exon, supra,* and *Gochenour v. Bolin, supra.*

Since the offenders herein are not subject to L.B. 567 meritorious good time sentence reduction provisions, they have no standing to complain about how such time is calculated and credited. *Hall v. Cox Cable of Omaha, Inc.,* 212 Neb. 887, 327 N.W.2d 595 (1982); *First Fed. Sav. & Loan Assn. v. Department of Banking,* 187 Neb. 562, 192 N.W.2d 736 (1971).

AFFIRMED.