IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

JOHNSON V. FRAKES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JEREMY JOHNSON, APPELLANT,

V.

SCOTT FRAKES, DIRECTOR OF THE NEBRASKA DEPARTMENT OF
CORRECTIONAL SERVICES, AND TAGGART BOYD, WARDEN
OF THE LINCOLN CORRECTIONAL CENTER, APPELLEES.

Filed December 1, 2020.    No. A-20-037.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Jeremy Johnson, pro se.

Douglas J. Peterson, Attorney General, and James D. Smith for appellees.

PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

MOORE, Judge.

INTRODUCTION

Jeremy Johnson filed a declaratory judgment action in the district court for Lancaster County against Scott Frakes, the director of the Nebraska Department of Correctional Services (DCS), and Taggart Boyd, the warden of the Lincoln Correctional Center, where Johnson is serving consolidated sentences received in 1990, 1993, and 1997. Johnson asserts that his parole eligibility date should have been calculated by applying the good time law in effect at the time of his 1997 sentence, rather than that in effect at the time of his initial sentence. The district court found that Johnson's sentences were appropriately consolidated and that DCS had used the correct good time law to calculate Johnson's parole eligibility date. Accordingly, it granted summary judgment in favor of the defendants. Finding no error, we affirm.

- 1 -

BACKGROUND

In April 1990, Johnson was sentenced by the Douglas County District Court in case No. CR 125-704 (the 1990 case) for his conviction of two counts of second degree assault, use of a firearm to commit a felony, and first degree assault to a total term of imprisonment of 5 years 8 months to 13 years, with 170 days' credit for time spent in jail. The good time law in effect at that time was Neb. Laws 1975, L.B. 567. See Neb. Rev. Stat. § 83-1,107 (Reissue 1987).

In March 1993, while serving his sentence in the 1990 case, Johnson was sentenced by the Lancaster County District Court in case No. CR 84-246 (the 1993 case) for his conviction of third degree assault on a peace officer/DCS employee to a consecutive term of imprisonment of 0 to 1 year, bringing his total term of imprisonment to 5 years 8 months to 14 years.

Johnson was granted parole in December 1995, and on April 22, 1996 he was declared to have absconded from parole supervision. On May 28, Johnson was arrested, and he was held in the Douglas County Department of Corrections until August 1, 1997. After his arrest, Johnson received a form notifying him that a preliminary hearing in the parole revocation proceedings due to his alleged parole violations was scheduled for June 9, 1996. On June 3, Johnson signed an attached request form, seeking to postpone the preliminary hearing in the revocation proceedings until the resolution of additional criminal charges pending against him in the Douglas County District Court.

With respect to the pending criminal charges, in case No. CR 139-751 (the 1997 case), Johnson appeared before the district court on August 1, 1997, and was found guilty of possession of a deadly weapon by a felon, operating a motor vehicle to avoid arrest, two counts of discharging a firearm at an occupied building, and two counts of use of a deadly weapon to commit a felony. The court sentenced Johnson to a term of imprisonment totaling 60 to 100 years with 429 days' jail time credit, and he was returned to DCS custody on August 1. The court's judgment and sentence in the 1997 case was affirmed on appeal by this court, and the mandate was entered on September 15, 1998. See *State v. Johnson*, 7 Neb. App. xvi (No. A-97-914, June 24, 1998).

On August 26, 1997 Johnson's parole was formally revoked. DCS assessed 36 days' "dead time" for the period when Johnson absconded from parole. DCS calculated 429 days' jail time credit as ordered in the 1997 case, which it then offset as additional dead time because Johnson was already serving a state sentence and the jail time credit of 429 days would have resulted in a double credit. Accordingly, DCS assessed a total dead time of 465 days. Johnson's aggregate consolidated sentence from the 1990, 1993, and 1997 cases totaled 65 years 8 months to 114 years' imprisonment with 599 days' jail time credit and 465 days' dead time. Applying the good time law under L.B. 567 to the consolidated sentences, DCS calculated Johnson's parole eligibility date as February 13, 2034, with a tentative release date of September 29, 2048. This includes 624 days' loss of good time.

On August 9, 2018, Johnson filed a complaint and motion for declaratory judgment pursuant to Neb. Rev. Stat. § 25-21,149 (Reissue 2016), alleging that the sentences he received in 1990, 1993, and 1997 were incorrectly consolidated and that his parole eligibility date was wrongly calculated by using L.B. 567. Instead, Johnson claimed that his parole eligibility date should have been calculated using Neb. Laws 1997, L.B. 364, the good time law in effect at the time his

sentence became final in the 1997 case. See Neb. Rev. Stat. § 83-1,107 (Cum. Supp. 1998). Johnson alleged that his actual parole eligibility date should be sometime in 2026. He asked the district court to declare that the defendants' actions in incorrectly calculating his parole eligibility date violated his constitutional rights, order DCS to apply the "correct" good time law to his sentence, and award him the costs of his lawsuit.

The defendants filed a motion for summary judgment, which was heard by the district court on December 13, 2019. The court received various exhibits, reflecting the facts set forth above, and heard argument from the parties.

On December 31, 2019, the district court entered an order, granting the defendants' motion for summary judgment and dismissing Johnson's case with prejudice. After setting out its findings of material fact, the court reviewed Nebraska law regarding the consolidation of consecutive sentences. Because Johnson received his sentences in the 1997 case while he was still serving the consolidated sentences imposed in the 1990 and 1993 cases, the court found that DCS appropriately consolidated the sentences imposed in the 1997 case with those imposed in the previous cases. Next, the court determined that DCS correctly applied the good time law under L.B. 567 to Johnson's total aggregate sentence to calculate his parole eligibility date. Citing *Boston v. Black*, 215 Neb. 701, 340 N.W.2d 401 (1983), the court observed that the date of an offender's initial incarceration is the date on which service of such consolidated sentence is deemed to begin. Because Johnson's initial incarceration began in April 1990, his parole eligibility date on his entire consolidated sentence was correctly calculated using L.B. 567, the good time law in effect at that time. Finally, the court determined that the Nebraska Board of Parole had correctly assessed 465 days' dead time. It also observed that any challenge to the parole board's imposition of 465 days' dead time was an impermissible collateral attack on an adjudication and could not be maintained in the present declaratory judgment action.

## ASSIGNMENTS OF ERROR

Johnson asserts, restated, that the district court erred in (1) failing to grant him declaratory relief and ruling that his parole eligibility date was properly calculated under L.B. 567 and (2) retroactively applying L.B. 567 in violation of the Ex Post Facto Clauses of the U.S. and Nebraska Constitutions.

## STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *First State Bank Neb. v. MP Nexlevel*, 307 Neb. 198, 948 N.W.2d 708 (2020). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Id.*

ANALYSIS

*Applicable Good Time Law.*

Johnson asserts that the district court erred in failing to grant him declaratory relief and ruling that his parole eligibility date was properly calculated under L.B. 567. On appeal, Johnson does not contest the consolidation of his sentences; however, he argues that his parole eligibility date should have been calculated by applying L.B. 364, the good time law in effect at the time of his 1997 sentence, rather than L.B. 567, the good time law in effect at the time of his initial sentence in 1990. Specifically, he argues that L.B. 364 should have been used for the calculation because "there was only six months remaining on his original sentence [consolidated sentences from 1990 and 1993]" when his 1997 sentence became final following his direct appeal in the 1997 case and because L.B. 567 was no longer in effect at that time. Brief for appellant at 5. We disagree with his assertion that L.B. 364 should have been used to calculate his parole eligibility date and find that the district court did not err in determining that L.B. 567 was the applicable good time law.

Although the formula for calculating an offender's parole eligibility date changed between the time when Johnson was sentenced in the 1990 case and when he was sentenced in the 1997 case, Nebraska law has provided at all relevant times for the consolidation of consecutive prison terms "whether received at the same time or at any time during the original sentence." See Neb. Rev. Stat. § 83-1,110(2) (Reissue 1987 and Cum. Supp. 1998). In determining that Johnson's 1990, 1993, and 1997 cases were correctly consolidated into a single sentence for purposes of calculating good time and that the applicable good time law was the law in effect when Johnson began serving his consolidated sentence, the district court cited *Boston v. Black*, 215 Neb. 701, 340 N.W.2d 401 (1983).

In *Boston*, the Nebraska Supreme Court considered the calculation of good time credits for offenders serving consolidated sentences who had incurred additional sentences due to additional convictions, as well as the due process arguments raised by some of those offenders. In that case, the Supreme Court stated that "any consecutive terms an offender receives while incarcerated are to be consolidated with any other sentence by adding the minimum terms together and adding the maximum terms together." *Boston v. Black*, 215 Neb. at 704, 340 N.W.2d at 405. The court determined that § 83-1,110 defines an offender's sentence, for the purpose of good time computations, as the sum of all sentences he receives, regardless of when incurred. *Boston v. Black, supra*. The court also observed that the date of an offender's initial incarceration is the date on which service of such consolidated sentence is deemed to begin. *Id.*

The offenders in *Boston* argued that the application of the good time law in effect at the time of their initial sentences rather than that in effect at the time of their subsequent offenses was not consistent with due process. The Supreme Court found the due process argument unpersuasive and stated, "The fact of the matter is that application of the law embodied in [the law in effect at the time of their initial sentences] to determine offenders' good time rights took place not at the time they were convicted of the subsequent offenses but at the time they began serving their initial sentences." *Id.*, 215 Neb. at 710, 340 N.W.2d at 407-08. See, also, *Luxford v. Benson*, 216 Neb. 115, 341 N.W.2d 925 (1983) (offender's sentence, for purpose of good time computations, is sum of all sentences regardless of when incurred); *Richardson v. Clarke*, 2 Neb. App. 575, 579, 512

N.W.2d 653, 656 (1994) ("[f]or consolidated sentences, good time applicable to the initial sentence is applicable to the entire sentence").

Johnson asserts that his consolidated sentence in the 1990 and 1993 cases expired on March 28, 1999 (exhibits in the record show a "TRD" of March 28, 1999 after consolidation of the sentences in the 1990 and 1993 cases). Next, Johnson observes that his sentence in the 1997 case did not begin to run until the expiration of his previously consolidated sentences. See *State v. Harms*, 304 Neb. 441, 934 N.W.2d 850 (2019) (when sentence is pronounced upon prisoner already serving sentence from another court, second sentence does not begin to run until previous sentence has expired, unless court pronouncing second sentence specifically states otherwise). Johnson also observes that his sentence in the 1997 case did not become final until entry of the appellate mandate in September 1998. See *State v. Nollen*, 296 Neb. 94, 892 N.W.2d 81 (2017) (defendant's sentence becomes final on date that appellate court enters its mandate concerning appeal, if there is appeal).

Based on the above assertion and observations, Johnson argues first that L.B. 567 should not have been applied to calculate his good time after consolidation of his sentence in the 1997 case with his previously consolidated sentences because at the time that his 1997 sentence became final "there was only six months remaining on his original sentence of 14 years [consolidated sentences from 1990 and 1993]." Brief for appellant at 5. Johnson also argues that because L.B. 364 was the good time law in effect when he began serving his sentence in the 1997 case, it should have been applied to calculate his parole eligibility date. Johnson's arguments ignore the fact that once sentences are consolidated, the date of an offender's initial incarceration is the date on which service of the consolidated sentence begins. See § 83-1,110(2); *Boston v. Black*, 215 Neb. 701, 340 N.W.2d 401 (1983). Once Johnson's 1997 sentence was consolidated with the previous sentences, the applicable good time law to calculate Johnson's parole eligibility date was that in effect at the time of his initial incarceration in 1990.

Johnson also cites *State v. Schrein*, 247 Neb. 256, 526 N.W.2d 420 (1995) for his argument that he should receive the benefit of the good time law in effect at the time his 1997 sentence became final. However, *Schrein* concerned the issue of what law applies when the good time law is revised during the pendency of a defendant's appeal. It did not consider the issue of which good time law applies to individuals serving consolidated sentences and is thus inapplicable to this case.

The district court did not err in determining that Johnson's sentences in the 1990, 1993, and 1997 cases were properly consolidated and that L.B. 567 was the applicable good time law. Accordingly, its grant of summary judgment in favor of the defendants was proper.

*Ex Post Facto Clauses.*

Johnson asserts that the district court erred in retroactively applying L.B. 567 in violation of the Ex Post Facto Clauses of the U.S. and Nebraska Constitutions. Johnson did not raise the issue below of whether application of L.B. 567 to calculate his parole eligibility date presented a violation of the ex post facto clause. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *In re Guardianship & Conservatorship of J.F.*, 307 Neb. 452, 949 N.W.2d 496 (2020). Regardless, this case does not present the retroactive application of a law in violation of the Ex Post Facto Clause.

An ex post facto law is a law which purports to apply to events that occurred before the law's enactment and which disadvantages a defendant by creating or enhancing penalties that did not exist when the offense was committed. *State v. Jenkins*, 303 Neb. 676, 931 N.W.2d 851 (2019), *cert. denied* ___ U.S. ___, 140 S. Ct. 2704, 206 L. Ed. 2d 844 (2020). A subsequently enacted good time law violates the Ex Post Facto Clause if it is both retrospective and more onerous than the law in effect on the date of the offense. See *Luxford v. Benson*, 216 Neb. 115, 341 N.W.2d 925 (1983). See, also, *Weaver v. Graham*, 450 U.S. 24, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981). Johnson's claim does not fulfill the first requirement of retrospection necessary to satisfy this test. The good time law found in L.B. 567 was not applied to crimes occurring before its enactment. Instead, L.B. 567 was applied in this case to Johnson's crimes and consolidated sentences all occurring after its enactment. Johnson's assignment of error fails.

CONCLUSION

Because Johnson's sentences were appropriately consolidated and the district court correctly determined that L.B. 567 was the applicable good time law, the district court properly granted summary judgment on that basis and dismissed Johnson's declaratory judgment action with prejudice. The judgment of the district court is affirmed.

AFFIRMED.