GLEN R. MILLER, APPELLANT, V.
HARRY PETERSON, DIRECTOR OF THE DEPARTMENT OF
MOTOR VEHICLES, APPELLEE.

305 N.W.2d 364

Filed May 1, 1981.   No. 43320.

Steven C. Smith of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke for appellant.

Paul L. Douglas, Attorney General, and Ruth Anne E. Galter for appellee.

Heard before KRIVOSHA, C.J., WHITE, and HASTINGS, JJ., and VAN PELT and CAPORALE, District Judges.

HASTINGS, J.

Plaintiff, Glen R. Miller, appealed to the District

Court from an order of Harry Peterson, director of the Department of Motor Vehicles for the State of Nebraska, defendant, who had revoked Miller's motor vehicle operator's license pursuant to the so-called point system, Neb. Rev. Stat. § 39-669.27 (Reissue 1978). The District Court affirmed the action of the director, and Miller has appealed to this court. We reverse.

One of the convictions utilized to assess the requisite 12 points was one dated November 17, 1978, out of the county court of Hamilton County. The transcript from the Department of Motor Vehicles contains an abstract of judgment obviously describing that case and certified to by the clerk of the county court. The record made in District Court contains a certified copy of the actual docket sheet. That sheet is filled out completely except that there is no signature by a judge. The record also contains a "waiver and plea of guilty" signed by Miller. We were presented with the same situation in *Hyland v. State*, 194 Neb. 737, 235 N.W.2d 236 (1975), and were forced to reject the director's reasoning. "We find no authority to support that position [that a waiver of appearance and plea of guilty signed by the person charged should be treated as a 'judgment of conviction'] where there is no acceptance of the guilty plea and no record of a conviction or judgment of conviction by the court." *Id.* at 740, 235 N.W.2d at 238. If in fact the plea was accepted and Miller judicially found guilty, but the judge simply neglected to affix his signature, that omission can readily be cured. If the "waiver and plea" actually has not been acted upon by a judge, it can properly be presented at this time.

Miller objects to two other speeding convictions as being void because they were entered by nonlawyer associate judges. His reasoning is that the trial authority of such judges is limited by Neb. Rev. Stat. § 24-519 (Reissue 1979) to "[a]ny civil proceeding when the amount . . . claimed does not exceed one

thousand dollars; . . . [a]ny proceeding based on violation of a city or village ordinance; [or] . . . [a]ny criminal proceeding which is a misdemeanor under the laws of this state." After the effective date of that statute, the Legislature enacted what has now been codified as Neb. Rev. Stat. § 39-602(107) (Cum. Supp. 1980). This legislation, Miller argues, creates an additional offense category called a "traffic infraction," which includes the violation of any of the Nebraska Rules of the Road "or of any law, ordinance, order, rule, or regulation regulating traffic which is not otherwise declared to be a misdemeanor or a felony and which shall be a civil offense."

Miller insists that the powers of nonlawyer associate judges, like judges themselves, extend and are limited to those fixed by law, beyond which they cannot act. He concludes, then, that there being no statutory authority for the nonlawyer judges to hear traffic cases, his two convictions were void and cannot form the basis for a point assessment.

Section 24-519 is a part of L.B. 1032 enacted in 1972, and § 39-602(107) finds its origin in L.B. 45, effective in 1973. Section 24-519 authorizes, and continues to authorize, a nonlawyer associate judge to enter judgments in civil cases involving damages of up to $1,000 and to impose criminal sentences of imprisonment for 1 year and fines of $1,000. Neb. Rev. Stat. § 28-106 (Reissue 1979). It makes absolutely no sense for the Legislature to 1 year later forbid these same judges to hear infractions of a civil nature in which the maximum fine ranges from $100 to $300. Neb. Rev. Stat. § 39-6,112 (Reissue 1978).

"It is a fundamental rule of construction that in construing statutes this court will if possible try to avoid a construction which leads to absurd, unjust, or unconscionable results." *State v. Goham*, 191 Neb. 639, 641, 216 N.W.2d 869, 871 (1974). A sensible construction will be placed upon a statute to effectuate the object of the legislation rather than a literal

meaning that would have the effect of defeating the legislative intent. In order to determine this intent the reasons for the enactment of the statute and the purposes and objects of an act as obtained from an examination of the legislative history may be used as guides in an attempt to give effect to the main intent of lawmakers. *PPG Industries Canada Ltd. v. Kreuscher*, 204 Neb. 220, 281 N.W.2d 762 (1979).

The Nebraska Rules of the Road, Neb. Rev. Stat. §§ 39-601 et seq. (Reissue 1978), was the result of a comprehensive revision of motor vehicle traffic laws as expressed by Neb. Laws 1973, L.B. 45, and for the most part was based upon the Uniform Vehicle Code prepared by the National Committee on Uniform Traffic Laws and Ordinances (Rev. 1968). Committee on Public Works, Eighty-third Legislature, Minutes of January 18, 1973, Hearing at 17-20. The notable deviation has to do with the penalty provisions. The uniform code for the most part classifies traffic offenses as misdemeanors and provides for penalties of not more than 10 days in jail or a fine of $100, with a corresponding increase for the second and third convictions within the same year. Uniform Vehicle Code § 17-101. The Nebraska Rules of the Road, as previously mentioned, classify these offenses as "traffic infractions" and, although failing to grant authority for jail sentences, follow the system of progressive fines found in the uniform code. The creation of the offense of "traffic infraction" is explained in the minutes of the Public Works Committee previously cited, beginning at 21: "SENATOR WARNER: Would some penalties for infractions be less now as a general rule? MR. NELSON: In terms of a maximum, this is true. There have been some changes because of the United States Supreme Court decision requiring counsel where there is a possible jail. [sic] Now the experience over the country, and this is verified in Lincoln or Omaha, Nebraska, is that for that type of offense jail has not been used, but

there would be a requirement for counsel to be appointed and this type of thing. As a consequence, there has been a definition in here of the term 'infraction' which does not include any jail sentence, but it does include some heavier penalties in terms of fines, as opposed, for example, to the term 'misdemeanor' which will include a jail sentence or possible jail sentence." It would therefore seem that it was never the intention of the Legislature to deprive the nonlawyer associate judges of jurisdiction over this particular classification of offenses. Rather, it was intended simply as a limitation on the penalties to be imposed in a category of cases which formerly had been called misdemeanors.

Another answer to Miller's claim may be found in *State v. Karel*, 204 Neb. 573, 284 N.W.2d 12 (1979); *State v. Huffman*, 202 Neb. 434, 275 N.W.2d 838 (1979); and *State v. Knoles*, 199 Neb. 211, 256 N.W.2d 873 (1977). In all of these cases we held, under different circumstances, that a "traffic infraction" was a criminal offense and that the prosecution of such action is a criminal proceeding.

We therefore hold that a nonlawyer associate judge of the county court is authorized to preside in any proceeding involving a "traffic infraction" as defined by § 39-602(107), and Miller's assignment of error in that regard has no merit.

However, because of the deficiency in the November 17, 1978, conviction in the county court of Hamilton County, relied upon by the director, the District Court should have vacated and set aside his order revoking Miller's license. Therefore, the judgment of the District Court is reversed and the order complained of is vacated and set aside.

REVERSED.