DONALD D. ADKISSON, APPELLANT, V. CITY OF COLUMBUS, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE.

333 N.W.2d 661

Filed April 21, 1983. No. 82-115.

Noren & Burns, for appellant.

Luckey, Sipple & Hansen, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, HASTINGS, and CAPORALE, JJ., and COLWELL, D.J., Retired.

KRIVOSHA, C.J.

This appeal concerns the appropriate pension to be paid to a firefighter in a city of the first class who has become permanently disabled and is therefore entitled to a pension prior to the time of either reaching the age of 55 or having served for 21 years on the fire department. At the urging of the appellee, the City of Columbus, the trial court concluded that the appellant, Donald D. Adkisson, was entitled to receive a pension from the city in an amount equal to thirteen twenty-firsts of 50 percent of the amount of the salary Adkisson was receiving at the time he was placed on the pension list by reason of his disability. Adkisson, on the other hand, maintained that he was entitled to receive an amount equal to 50 percent of his former salary. We believe that Adkisson is correct and that the decision of the trial court must be reversed.

The facts have been stipulated to by the parties and are without dispute. Adkisson, who was 47 years of age when he was declared permanently and totally disabled by the city, was a 13-year firefighter employed by the city, a city of the first class. At some time prior to May 5, 1981, Adkisson became temporarily totally disabled by reason of an injury incurred while in the line of duty. The city thereafter determined that Adkisson had become permanently disabled and, on May 5, 1981, placed him on the pension list.

The controversy in this case arises by reason of an apparent conflict contained in the statutes pertaining to the pension of firefighters employed by cities of the first class who become disabled in the line of duty. Neb. Rev. Stat. §§ 35-201 to 35-216 (Cum. Supp. 1982). Specifically, § 35-211 provides in part as follows: "In case any such firefighter shall become permanently and totally disabled from accident or

other cause, for the work he or she was doing at the time of such accident or other cause, while in the line of duty, such firefighter shall forthwith be placed upon the roll of pensioned firefighters, at the rate provided for retired firefighters in sections 35-206 and 35-207." There is no dispute that Adkisson became totally and permanently disabled while in the line of duty and that the provisions of § 35-211 as well as § 35-206 apply. Section 35-207 pertains to pensions for survivors of retired firefighters and is not relevant to this discussion. What we must determine is the amount of the pension to be paid to Adkisson under the provisions of § 35-206.

Section 35-206 reads as follows: "Every such city shall pension all such firefighters whenever such firefighters shall have first served in the paid fire department for a period of twenty-one years, shall have obtained the age of fifty-five years, and shall elect to retire from active service and go upon the retired list. Such pension shall be paid by the city in the same manner as firefighters upon the active list are paid and *such pension shall be at least fifty per cent of the amount of salary* such retiring firefighter is receiving at the time he or she goes upon such pension list. *Any firefighter who retires on or after age fifty-five with less than twenty-one years of service shall receive a pension of at least fifty per cent of the salary he or she was receiving at the time of retirement multiplied by the ratio of the years of service to twenty-one.*" (Emphasis supplied.)

Adkisson argues that it is the first two sentences of § 35-206 which apply to him, demanding that he receive a pension of not less than 50 percent of the amount of salary he was receiving at the time he went upon the list. The city, on the other hand, argues that it is the last sentence of § 35-206 which applies to Adkisson and that the city therefore is entitled to reduce the 50 percent by the number of years less than 21 which Adkisson served on the fire

department before becoming disabled. The only thing certain about the section is that it is ambiguous and does require interpretation. Section 35-211 refers to "the rate" in § 35-206. But § 35-206 contains two rates, and the statute, § 35-211, is unclear which of the two rates should apply.

We are guided by certain principles of legislative construction. We are first reminded that a statute should be construed so that an ordinary person reading it would get from it the usual, accepted meaning. Rules of interpretation are resorted to for the purpose of resolving an ambiguity, not of creating it. See *State ex rel. Finigan v. Norfolk Live Stock Sales Co., Inc.*, 178 Neb. 87, 132 N.W.2d 302 (1964). Furthermore, we are advised: "The obligation of the court in the consideration and application of a statute is to determine and give effect to the purpose and intention of the Legislature as ascertained from the entire language thereof considered in its plain, ordinary, and popular sense. It is the duty of the court to give effect to the whole and each part of the statute if not in conflict with the legislative intent and to reconcile the different provisions of it, if possible, so as to make them logical, harmonious, and sensible." *Ledwith v. Bankers Life Ins. Co.*, 156 Neb. 107, 115-16, 54 N.W.2d 409, 416 (1952). Moreover, "It is a fundamental rule of statutory construction that effect must be given, if possible, to all its several parts. No sentence, clause or word should be rejected as meaningless or superfluous, if it can be avoided; but the subject of the enactment and the language employed, in its plain, ordinary and popular sense, should be taken into account, in order to determine the legislative will. It is the duty of the court to discover, if possible, the legislative intent from the statute itself." *Hansen v. Dakota County*, 135 Neb. 582, 585, 283 N.W. 217, 219 (1939).

And, recently, in *Miller v. Peterson*, 208 Neb. 658, 660-61, 305 N.W.2d 364, 366 (1981), we observed: "A sensible construction will be placed upon a statute

to effectuate the object of the legislation rather than a literal meaning that would have the effect of defeating the legislative intent. In order to determine this intent the reasons for the enactment of the statute and the purposes and objects of an act as obtained from an examination of the legislative history may be used as guides in an attempt to give effect to the main intent of lawmakers." It is a fundamental rule of construction that in construing statutes this court will, if possible, try to avoid a construction which leads to absurd, unjust, or unconscionable results. See *State v. Goham*, 191 Neb. 639, 216 N.W.2d 869 (1974).

It is also settled law that where the general intent of the Legislature may be readily discerned, and yet the language in which the law is expressed leaves the application of it in specific instances obscure, doubtful, ambiguous, or uncertain, the courts may have recourse to historical facts or general information in order to aid them in interpreting its provisions. See *Nebraska District of Evangelical Lutheran Synod v. McKelvie*, 104 Neb. 93, 175 N.W. 531 (1919). And in *PPG Industries Canada Ltd. v. Kreuscher*, 204 Neb. 220, 227-28, 281 N.W.2d 762, 767-68 (1979), we said: "The legislative intention is to be determined from the general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent deduced from the whole will prevail over that of a particular part considered separately. . . . To ascertain such intent, a court will not examine an operative provision without likewise examining the statute as a whole in the light of objects and purposes of the act. . . . A primary rule of construction is that the intention of the Legislature is to be found in the ordinary meaning of the words of a statute in the connection in which they are used and in light of the mischief to be remedied."

"The reasons for the enactment and the purposes

and objects of an act may be guides in an attempt to give effect to the main intent of the lawmakers. The court must look to the object to be accomplished or the purpose to be subserved and place such construction on the statute that will best effect that purpose, rather than one that will defeat it." *Seldin Development & Management Co. v. Chizek*, 208 Neb. 315, 319, 303 N.W.2d 300, 303 (1981). In *Ledwith v. Bankers Life Ins. Co., supra* at 122, 54 N.W.2d at 419, we noted: "In construing a statute of doubtful meaning courts may consider all statutes on the same subject."

With these basic rules in mind we examine the history of the statutes in question in an effort to ascertain the legislative intent. As the statutory history indicates, the first two sentences of § 35-206 were enacted in 1943. However, the origin of pensions for permanently disabled firefighters in first-class cities antedates even the adoption of § 35-206 and, as disclosed in § 35-201, was first enacted in 1895. An examination of the relevant statutes discloses that from 1909 until 1975 any firefighter who became permanently disabled while employed by a city of the first class was to be retired and paid a pension equal to the rate for retired firefighters, that is, 50 percent of the salary the firefighter was earning at the time he or she became disabled, without regard to age or years of service. In addition to that, the history of the relevant statutes discloses that before 1975 a firefighter employed by a city of the first class who retired *before* he or she had served 21 years with the fire department and who was not permanently disabled received *no* pension upon retirement. In order for firefighters in a city of the first class to receive a retirement pension, which was computed at 50 percent of the salary they were earning at the time of their retirement, they must have met several requirements, the principal one of which was that the firefighter must have served 21 years at the time the firefighter reached statutory

retirement age. It was not until 1975, through the introduction of L.B. 416, that a firefighter who sought to retire before having served 21 years became eligible for any type of retirement. In 1975 the third sentence of § 35-206, quoted earlier in this opinion, was added so as to provide that a firefighter who had attained at least the age of 55 but who had served less than 21 years could retire and receive a pension computed at 50 percent of the salary he or she was receiving at the time of retirement multiplied by the ratio of the years of service to twenty-one.

At the hearing on L.B. 416 Senator Gary Anderson, the bill's introducer, explained that the provision in question was "to allow someone who cannot get their 21 years service or who elects to retire early to elect to take an actuarially reduced pension based on the number of years service and the amount of money they have paid in." Committee Hearing, Nebraska Retirement Systems Committee, 84th Leg., 1st Sess. 16 (March 3, 1975). The purpose of the act was to permit a firefighter who had reached the age of 55 with less than 21 years of service to *elect* to retire and begin to take a pension. No mention was made anywhere during the debate with regard to a firefighter who was *required* to accept a pension by reason of being declared disabled by the city.

The problem which the bill was attempting to correct was made apparent when a representative of the state firefighters association appeared at a Nebraska Retirement Systems Committee hearing concerning the amendment. The representative offered an example to the committee as to why the amendment was necessary. He said, according to the transcript, "In the city of Columbus there happens to be a Fire Fighter who went on the force at approximately age 40, they have a mandatory retirement age of 60. There is no way that this fire fighter can ever attain any pension benefits because there is no way prior to his retirement that he can accumu-

late 21 years of prior service. So I think that if my memory serves me correctly this particular fire fighter would serve on the force for 17 years, at the end of those 17 years when he has to retire because of a mandatory age 60 in Columbus, he has to retire, the city will give him back his contributions without interest.

"We think in situations such as this that the fire fighter should be entitled to take a retirement benefit, actuarially reduced by the number of years of service that he has in comparison with the 21 years that he is required to have at the present time." *Id.* at 17.

All of the discussion concerning the purpose of the bill, both before the legislative committee and on the floor of the Legislature, concerned itself with attempting to correct a situation where a firefighter continued to work after retirement age but, because the firefighter had not served 21 years by the time of reaching mandatory retirement, was ineligible to receive any retirement benefits.

A further indication that the Legislature never intended that the amendment to § 35-206 have an impact on disability benefits can be found in a comparison of two reports by the Nebraska Retirement Systems Committee, which, among other things, summarized and compared the various retirement systems for political subdivisions throughout the state. The June 1974 report, at 53, describes the disability benefit for duty-related injuries as "50 percent of final salary as a disabled life annuity." This, of course, was before the 1975 amendment. The October 1981 report, at 40, describes the same benefit with precisely the same language. Nothing is added in the 1981 report to indicate that the disability benefit would change with the amount of service years. However, the two reports do note a difference with regard to retirement unrelated to disability. The 1974 report notes that normal retirement is at age 55 and 21 years of service and that there is no provision

for early retirement. In contrast, the 1981 report says that an employee may retire after age 55 with less than 21 years of service, but at a reduced rate.

What is clear from an examination of the history of this matter is that what the Legislature was intending to do in amending § 35-206 in 1975 was to expand the benefits for firefighters, not reduce them. It was seeking to provide some retirement benefits for firefighters who, but for the amendment, would have received nothing upon retirement; it was not attempting to take away from disabled firefighters benefits for which they were already entitled.

Furthermore, when one examines similar Nebraska statutes on the same subject, one quickly discovers that to accept the argument now advanced by the city would be to penalize firefighters in the city and other cities of the first class while not similarly penalizing either policemen in cities of the first class or police and firefighters in other Nebraska communities. Neb. Rev. Stat. § 16-335 (Reissue 1977), first adopted in 1963, provides for a pension to be paid to policemen who become permanently and totally disabled while in the line of duty and prior to reaching the age of retirement. Section 16-335 provides in part: "In case any such policeman shall become permanently and totally disabled from accident or other cause, while in the line of his duty, and said policeman because of such disability is unable to resume the duties he was performing at the time of his injury, such policeman shall forthwith be placed upon the roll of pensioned policemen at the regular retirement pension of fifty per cent of his regular pay, as defined in section 16-330." That is exactly the same rate that was applicable to firefighters in Columbus prior to 1975 and would remain applicable to firefighters in Columbus unless we accept the interpretation of § 35-206 advanced to us by the city. Similar provisions for an absolute 50 percent retirement for disabled police and firemen may also be found for police and firemen in primary

class cities, Neb. Rev. Stat. § 15-1006 (Cum. Supp. 1982), as well as Nebraska State Patrol officers, Neb. Rev. Stat. § 81-2026(2) (Cum. Supp. 1982). We can perceive of no reason why the Legislature would intend to penalize only firefighters in cities of the first class while not similarly limiting either police-men in cities of the first class or police and firemen in other communities throughout the state.

The city argues that the Legislature could not have intended to provide a disabled firefighter with less than 21 years with a better pension because of disability than it would have provided a nondisabled firefighter who elects to retire early. Neither the history of the act nor reason supports that position. Quite to the contrary, it occurs to us that the Legis-lature did intend to provide firefighters who become disabled in the line of duty with at least 50 percent of their salary. The reason is obvious. Firefighters are called upon frequently to face danger and take chances. One who has only served but a few years on the fire department may, even unconsciously, be restrained from adequately performing his or her duties because of fear that the firefighter's family will be inadequately provided for in the event of dis-ability. The suggestion that our ruling today will encourge fraudulent claims is spurious. After all, it is the governmental subdivision which makes the de-termination and not the firefighter. Whatever de-vices are used by the city to avoid fraud by its police officers can be used with regard to its firefighters.

While we concede that more careful draftsman-ship of the amendments in question could have avoided all of this difficulty, we nevertheless recog-nize that the legislative process, like so many other processes today, does not always leave time for careful draftsmanship. Nevertheless, the intent of the act is clear. For these reasons we hold that pur-suant to the provisions of §§ 35-211 and 35-206 (Reis-sue 1978), as presently enacted, a firefighter, em-ployed by a city of the first class, who becomes

permanently disabled in the line of duty and by reason thereof is retired is entitled to receive a pension equal to at least 50 percent of the salary such retiring firefighter is receiving at the time he or she goes upon such pension list. The judgment of the trial court is therefore reversed and the cause remanded with directions to enter judgment in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.