WILLIAM EBERT, APPELLANT, v. CHARLES BLACK,
WARDEN, ET AL., APPELLEES.
346 N.W.2d 254

Filed March 23, 1984. No. 83-139.

Dennis R. Keefe, Lancaster County Public Defender, and Richard L. Goos, for appellant.

Paul L. Douglas, Attorney General, and J. Kirk Brown, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Plaintiff-appellant, William Ebert, sought a declaration from the district court that defendants-appel-

lees, various persons connected with the Department of Correctional Services and the Board of Parole, had improperly computed his parole eligibility date. Ebert appeals from the district court's denial of the relief sought. We affirm.

Ebert was convicted of second degree forgery and sentenced to an indeterminate prison term of from 18 months to 4 years, with 2 days' credit for time spent in jail. He began to serve his sentence on January 12, 1982. On the following day the Department of Correctional Services gave Ebert credit for 3 months' good behavior time on his minimum term, leading to an earliest possible eligibility for parole date of April 9, 1983.

The two issues presented by Ebert's 11 assignments of error are how good behavior time is to be credited in determining his earliest possible parole eligibility date and whether he has been denied equal protection of the laws.

Neb. Rev. Stat. § 83-1,107(1) (Reissue 1981) provides: "The chief executive officer of a facility shall reduce for good behavior the term of a committed offender as follows: Two months on the first year, two months on the second year, three months on the third year, four months for each succeeding year of his term and pro rata for any part thereof which is less than a year. The total of all such reductions shall be credited from the date of sentence, which shall include any term of confinement prior to sentence and commitment as provided pursuant to section 83-1,106, and shall be deducted:

"(a) From his minimum term, to determine the date of his eligibility for release on parole; and

"(b) From his maximum term, to determine the date when his discharge from the custody of the state becomes mandatory."

Ebert claims that for the purpose of determining his earliest parole eligibility date, he was entitled to a credit of 11 months, not 3 months, as a deduction from his minimum period of incarceration of 18

months. In other words, he claims that for the purpose of determining a prisoner's parole eligibility, one looks only to the maximum period of possible incarceration, in this case 4 years, and deducts the good time credit computed on the basis of that maximum period from the minimum period of incarceration. If Ebert's contention is correct, his earliest parole eligibility date, though not computed in the record, would apparently have been August 9, 1982, rather than April 9, 1983, as computed by the Department of Correctional Services.

We dispose first of Ebert's contention that this case is somehow controlled by *Gochenour v. Bolin*, 208 Neb. 444, 303 N.W.2d 775 (1981). It is not. *Gochenour* concerned itself only with consolidating pre- and post-L.B. 567 sentences and the computation of various good time credits under that circumstance. That is not the situation presented here; therefore, the discussion in *Gochenour* concerning the computation of "good behavior" and "meritorious" good time credits has no relevance to this case. See, also, *Boston v. Black*, 215 Neb. 701, 340 N.W.2d 401 (1983).

Ebert's position overlooks the fact that an indeterminate sentence has, by its very nature, two terms, a minimum one and a maximum one. This elemental fact is recognized by the statutory scheme of which § 83-1,107(1) is but a part. See Neb. Rev. Stat. §§ 83-1,105 through 83-1,110 (Reissue 1981). These statutes speak of two terms, not of one term. Unfortunately, the use of the single word "term" in § 83-1,107(1) creates an ambiguity: To which term, the minimum or the maximum, is the good time computed in accordance with the formula set forth in § 83-1,107(1) to be applied in order to determine a prisoner's earliest possible parole eligibility date?

When a statute is ambiguous and must be construed, recourse should be had to the legislative history for the purpose of discovering the intent of lawmakers. *Adkisson v. City of Columbus*, 214 Neb.

129, 333 N.W.2d 661 (1983); *North Star Lodge #227 v. City of Lincoln,* 212 Neb. 236, 322 N.W.2d 419 (1982). A review of that history reveals that the computation made by the Department of Correctional Services in this case conforms to the illustrations used in explaining the application of § 83-1,107(1) to the Judiciary Committee of the Nebraska Legislature. Judiciary Committee Hearing, L.B. 567, 84th Leg., 1st Sess. 4-28 (March 10, 1975).

Moreover, a court will try to avoid, if possible, a construction which leads to absurd, unjust, or unconscionable results. *Adkisson v. City of Columbus, supra; State v. Coffman,* 213 Neb. 560, 330 N.W.2d 727 (1983). In order to avoid an absurd result, the statute in question must be construed to mean that the word "term" in § 83-1,107(1) refers to each of the two terms of an indeterminate sentence, not to just one of those terms. For example, if Ebert's contention were correct, a prisoner sentenced to an indeterminate sentence of from 1 to 5 years would be eligible for parole 3 months before he arrived at the prison gates. It may well be, as was suggested in oral argument, that equally bizarre results are in fact being achieved under other aspects of these "good time" statutes, but the fact that lunacy may exist in some spheres of public administration is no reason to completely abandon reason and logic in all areas of our lives.

We hold, therefore, that where an indeterminate sentence has been imposed, a prisoner's earliest possible parole eligibility date under § 83-1,107(1)(a) is to be determined by crediting good behavior time on the basis of the length of his minimum, not his maximum, term.

The result would be otherwise were we concerned with a prisoner's earliest possible release eligibility date under § 83-1,107(1)(b), in which case good behavior time would be computed on the basis of his maximum, not his minimum, term.

Ebert's second issue stems from the doctrine that good time credits may not be arbitrarily taken from

a prisoner. See, *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974); *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979). That principle is simply not involved in this case. Having determined that Ebert was never entitled to the 11-month credit he sought to have credited against his minimum term, no question of taking anything away from him is presented.

The judgment of the trial court was correct and is affirmed.

AFFIRMED.