REQUESTED BY: Senator Don Wesely District No. 26
1. Do the liability limitations which were previously incorporated into Neb.Rev.Stat. Sections 71-5111, 71-5511 and 35-107 still apply, or will the provisions of LB 258 replace them?
2. LB 258 amended Section 23-2402 Paragraph 3 to provide that "volunteer firefighters, and volunteer rescue squad personnel" are "employee(s) of a political subdivision." Of what political subdivisions are they considered to be employees, since services are often provided to more than one political subdivision?
3. If the certified ambulance attendant is liable only for gross negligence, does this standard also apply to the political subdivision, or is it still liable for the simple negligence of this employee?
4. What constitutes a "single occurrence" for the purposes of Section 23-2416.03?
5. Section 23-2402 Paragraph 3 uses the terminology "volunteer rescue squad personnel." Section 71-5102 mandates the licensing of an "ambulance or rescue service." Are "rescue squads" the same as "ambulance or rescue services"?
6. If a certified ambulance attendant is acting as a volunteer firefighter, which liability limitation standard is applicable, Section 35-107?
1. The liability limitations incorporated into Neb.Rev.Stat. Sections 71-5111, 71-5511 and 35-107
will still apply. Our review of pertinent caselaw indicates that special provisions in a statute covering a subject will prevail over general provisions in other statutes.
2. We cannot answer this question without more specific information about particular factual situations, because the answer depends on the particular facts of any given situation.
3. If a more specific liability standard applies to an employee of the political subdivision, it probably applies to the political subdivision as well.
4. For the purposes of Section 23-2416.03, a "single occurrence" can be defined as any injuries or causes of action arising out of one incident or accident.
5. Not entirely. Our review of the relevant statutes indicates that, logically, the reference to "rescue squads" in Section 23-2402 encompasses both the ambulance or rescue services provided for in Section 71-5102 and the "volunteer fire department or volunteer first aid, rescue, or emergency squad which provides emergency public first aid and rescue services" referred to in
In questions one and three of your opinion request, you ask essentially the same question: Do the liability limitations which were previously incorporated into Neb.Rev.Stat. Sections 71-5111, 71-5511 and 35-107 still apply, or will the provisions of LB 258 replace them? Before we can answer this question, reference needs to be made to the relevant statutes.
LB 258, which has since been enacted as the Political Subdivisions Tort Claims Act, provides in Neb.Rev.Stat. § 23-2416.01 (1987 Supp.) that: (1) No suit shall be commenced against any employee of a political subdivision for money on account of damage to or loss of property or personal injury to or the death of any person caused by any negligent or wrongful act or omission of the employee while acting in the scope of his or her office or employment occurring after May 13, 1987, unless a claim has been submitted in writing to the governing body of the political subdivision within one year after such claim accrued in accordance with section 23-2404.
(Emphasis added.)
Neb.Rev.Stat. § 23-2402 (1987 Supp.) was amended by LB 258 to include volunteer firefighters and volunteer rescue squad personnel as employees of political subdivisions. Thus, the general provisions of the Political Subdivisions Tort Claims Act provide that a political subdivision is liable for the simple negligence of its employees.
However, Neb.Rev.Stat. § 71-5111 (1987 Supp.) and § 35-107 (Reissue 1984) provide that certified ambulance attendants and volunteer firefighters or other volunteer first aid, rescue or emergency squads, respectively, are not liable for damages resulting from his or her act or omission as long as he acts in good faith, unless he or she causes damage by a willful, wanton or grossly negligent act or omission.
Although it appears that these statutes are inconsistent, the Nebraska Supreme Court has established guidelines for interpreting conflicting provisions in different statutes. In Glockel v. State Farm Mutual Automobile Insurance Company, 219 Neb. 222, 361 N.W.2d 559 (1985), the court noted: It is a well established rule that special provisions of a statute in regard to a particular subject will prevail over general provisions in the same or other statutes so far as there is a conflict. Houser v. School Dist. of South Sioux City, 189 Neb. 323, 202 N.W.2d 621. Where general and special provisions of statutes are in conflict, the general law yields to the special, without regard to priority of dates in enacting the same, and a special law will not be repealed by general provisions unless by express words or necessary implication. Bass v. County of Saline,171 Neb. 538, 106 N.W.2d 860. (Emphasis added.) Id. at 231, 361 N.W.2d at 565; Kibbon v. School Dist. of Omaha,196 Neb. 293, 298-99, 242 N.W.2d 634, 637 (1976).
Thus, it is apparent that the special provisions in Sections 71-5111 and 35-107 limiting the liability of certified ambulance attendants and volunteer firefighters and other rescue or emergency squad personnel to wanton, willful or grossly negligent acts or omissions applies even if they are employed by a political subdivision. That is, unless LB 258 repealed these special provisions "by express words or necessary implication," they should be applied over the general provisions.
To aid in making this determination, the Nebraska Supreme Court set forth the following guidelines regarding the construction of statutes: The legislative intent is the cardinal rule in the construction of statutes. All statutes relating to the same subject are considered as parts of a homogeneous system and later statutes are considered as supplementary to preceding enactments. Statutes relating to the same subject, although enacted at different times, are in pari materia and should be construed together.
Northwest High School District No. 82 v. Hessel,210 Neb. 219, 223, 313 N.W.2d 656, 658 (1981). After reviewing the legislative history behind LB 258, it is clear that the legislature did not intend to repeal Sections 71-5111 and35-107 setting forth special standards of liability for certain employees; rather, it was intended to prescribe a uniform method for filing tort suits against employees of political subdivisions. It was also intended to place a ceiling on the limit of liability to a political subdivision for the negligence of its employees. There is no language in the legislative history reflecting an intent to repeal any special standards for employee liability. The provision stating that a political subdivision is liable for the simple negligence of its employees takes effect in the absence of some statutory provisions setting forth a special liability standard for a certain employee.
In your second inquiry, you state that LB 258 provides that "volunteer firefighters, and volunteer rescue squad personnel" are "employee(s) of a political subdivision." In this regard, you ask of which political subdivision are they considered to be employees, since services are often provided to more than one political subdivision? The answer to this question depends upon the specific facts in a particular situation. Without any factual information, we can only speculate as to the situations that may arise where it is unclear as to which political subdivision employs the person in question. Therefore, we are unable to answer your question at this time.
Thirdly, you ask if a certified ambulance attendant is liable only for gross negligence, does this standard also apply to the political subdivision, or is it still liable for the simple negligence of this employee? Although this is a grey area, after reviewing the statutes and pertinent caselaw, we conclude that, if a more specific liability standard applies to an employee of the political subdivision, it probably applies to the political subdivision as well.
In the Political Subdivisions Tort Claims Act, a tort claim is defined as follows:
 Tort claim shall mean any claim against a political subdivision for money only on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the political subdivision, while acting within the scope of his or her office or employment, under circumstances in which the political subdivision, if a private person, would be liable to the claimant for such damage, loss, injury, or death, but shall not include any claim accruing before January 1, 1970. (Emphasis added.)
Neb.Rev.Stat. § 23-2402(4) (1987 Supp.). From this, it is apparent that the legislature intended that a political subdivision be held liable only for the negligent acts of its employees if it could be held liable as a private person or corporation. The liability provisions in the Act are most analogous to the liability limits in the doctrine of respondeat superior, which makes the employer liable to the same extent as its employee. 53 Am.Jur.2d, Master and Servant, § 407.
Moreover, as discussed previously, the specific liability provisions contained in Sections 71-5111 and 35-107 control over the general liability provisions contained in Section 23-2416.01. Thus, since certified ambulance attendants and volunteer rescue squad personnel would only be liable for their willful, wanton, or grossly negligent acts, it would be absurd to hold the political subdivision liable for their simple negligence. In this regard, the Nebraska Supreme Court has stated:
A sensible construction will be placed upon a statute to effectuate the object of the legislation rather than a literal meaning that would have the effect of defeating the legislative intent. . . . It is a fundamental rule of construction that in construing statutes this court will, if possible, try to avoid a construction which leads to absurd, unjust, or unconscionable results.
Adkisson v. City of Columbus, 214 Neb. 129, 133-134,333 N.W.2d 661, 664-665 (1983).
Significantly, the legislative history of the Act does not demonstrate that the legislature intended to hold a political subdivision to a standard of liability greater than that of its employees. Clearly, the Act provides that a political subdivision is liable for the simple negligence of its employees if there are no specific statutory provisions subjecting them to a more limited standard of liability. For example, a truck driver or common laborer would be subject to liability for his simple negligence. However, if there are more specific statutory provisions setting forth the standard of liability for an employee, these prevail over the general provisions of the Act as it pertains to the employee and the political subdivision.
The next issue you raise is what constitutes a "single occurrence" for the purposes of Section 23-2416.03? Neb.Rev.Stat. § 23-2416.03 (1987 Supp.) provides: The total amount recoverable against any employee for claims filed pursuant to section 23-2416.01 or 23-2416.02 arising out of an occurrence after May 13, 1987, shall be limited to: (1) One million dollars for any person for any number of claims arising out of a single occurrence; and (2) five million dollars for all claims arising out of a single occurrence. (Emphasis added.)
The meaning of the phrase "single occurrence" can be inferred from its usage in some negligence cases in this state. For example, in P.R. Halligan Post 163 v. Schultz,212 Neb. 329, 331, 322 N.W.2d 657, 658 (1982), this court stated: "The judicial unit for an appeal is the final determination of the issues arising from a set of facts involved in the same transaction or occurrence, and not the determination of an individual issue not disposing of the action." Looking at this language in conjunction with the plain language of the statute, we interpret the phrase "single occurrence" to mean any injuries or causes of action arising out of one incident or accident.
In your fifth inquiry, you state that Section 23-2402
Paragraph 3 uses the terminology "volunteer rescue squad personnel." Additionally, Section 71-5102 mandates the licensing of an "ambulance or rescue service." You then ask the question whether or not "rescue squads" are the same as "ambulance or rescue services"? Our interpretation of this phrase is based upon a logical analysis of the statutes involved.
In drafting this portion of the Political Subdivisions Tort Claims Act, we think that the legislature used the phrase "volunteer firefighters and volunteer rescue squad personnel" to encompass both the "ambulance or rescue services" provided for in Section 71-5102 and the "volunteer first aid, rescue, or emergency squad which provides emergency public first aid and rescue services" referred to in Section 35-107. That is, this provision incorporates the rescue services provided by certified ambulance attendants with the services provided by volunteer firefighters and other emergency rescue squad personnel into a single reference.
Finally, you ask if a certified ambulance attendant is acting as a volunteer firefighter, which liability standard is applicable, Section 35-107 or 71-5111? Conversely, if a volunteer firefighter is acting as a certified ambulance attendant, which liability limitation is applicable? Again, the answer to this question depends upon the specific facts of a given situation. For this reason, we can not provide you with an in-depth answer to your question. However, if we break your question down to its most simplistic form, it is apparent that if a certified ambulance attendant is acting only as a volunteer firefighter and is not employing any of his skills as a certified ambulance attendant, the liability limitation standard in Section 35-107 would logically apply. This analysis would also apply to the converse fact situation.
Sincerely,
ROBERT M. SPIRE Attorney General
Lisa D. Martin-Price Assistant Attorney General