REQUESTED BY: Allen L. Curtis, Executive Director Nebraska Crime Commission
You have made a request for an opinion regarding the application of Nebraska Jail Standards found in Title 81, N.A.C. Chapter 15, New Facility Design and Construction, to the regulation of criminal detention facilities as defined by Neb. Rev. Stat. § 83-4,125(1) (Reissue 1994). You have asked whether the Jail Standards Board may waive regulations governing physical plant standards, or a portion thereof, that were in effect when a criminal detention facility was initially constructed or renovated, and regulate a criminal detention facility under specifications found in revised physical plant standards.
You explain that the Jail Standards Board uses physical plant standards existing at the time a criminal detention facility is first constructed or renovated in order to regulate and determine whether the facility is in compliance with the Criminal Detention Minimum Standards Act found in Neb. Rev. Stat. §§ 83-4,124 et. seq. If physical plant standards are modified by the Jail Standards Board, once adopted the revised standards will apply to newly constructed or renovated facilities while the former standards are still applicable to facilities in existence prior to the modification. Thus, facilities that are in existence at the time physical plant standards are revised are "grand-fathered in" so that the revised standards are not used to regulate existing facilities.
The issue being addressed by this opinion is whether the Jail Standards Board in its regulation of criminal detention facilities may forego utilizing one set of physical plant standards, or parts thereof, in exchange for the use of a revised set of physical plant standards. This issue also encompasses whether the Board may use less restrictive standards that have been revised in place of more restrictive ones, in order to determine if the facility is in compliance with the Act.
 DISCUSSION
The Criminal Detention Minimum Standards Act establishes, "that all criminal detention facilities . . . in the state shall conform to certain minimum standards of construction, maintenance, and operation."[1] The Jail Standards Board was created by this Act to develop the minimum standards governing the construction of criminal detention facilities within the state.[2]
A criminal detention facility is defined as, "any institution operated by a political subdivision or a combination of political subdivisions for the careful keeping or rehabilitative needs of adult or juvenile criminal offenders or those persons being detained while awaiting disposition of charges against them. Criminal detention facility shall not include any institution operated by the Department of Correctional Services."[3]
The statute setting the confines of minimum construction standards is found in Neb. Rev. Stat. § 83-4,128. This section establishes that, "[t]he minimum standards for the construction of criminal detention facilities shall include but not be limited to standards for the planning, design, or actual construction of new, modified, or renovated facilities, in excess of five thousand dollars."[4] Section 001 of the Physical Plant Standards adheres to this statutory design by stating, "[i]t is the policy of the State of Nebraska that all newly constructed or renovated jail facilities where the aggregate cost of such construction or renovation exceeds $5,000 shall conform to the minimum standards for planning, design and construction established herein."[5]
Section 002 of the code sets forth the applicability of the physical plant standards in the following manner:
 All standards established by this chapter, except to the extent exceptions are stated, shall apply to each newly constructed holding and detention facility. In the case of renovation, it is the intent of the Board that only the part of the facility which is to be renovated is required to come into complete compliance with the applicable standards of this chapter.[6]
Under this code provision and the requirements found in §83-4,128, minimum standards adopted by the Board apply to facilities that are newly constructed, modified or renovated after the date the physical plant standards have been approved. The renovated portion of a facility is regulated by the existing standards at the time of the renovation. This regulation allows one set of standards to apply to a facility's renovated portions while at the same time permitting a different set of standards to govern non-renovated portions of the same facility.
The rationale for requiring physical plant standards to apply only to newly constructed, modified or renovated facilities at the time the construction or modification occurs, is that the standards are used to guide political subdivisions in their design and construction of a new jail facility or renovation of an existing facility. Local subdivisions are required to submit their construction proposals to the Jail Standards Board prior to the time the actual construction or renovation of the facility begins.[7] The Board then evaluates the proposed designs and gives its approval if the designs are in compliance with existing standards.[8]
If an area of a facility is designated for a particular purpose in accordance with existing physical plant standards, those standards control until at such time a subsequent modification of a facility occurs. Once a facility is modified, then the standards in place at the time of the new modification will determine the specifications and available uses of the area affected by the alteration.[9]
Section 83-4,128 was intended to have minimum standards for construction of criminal detention facilities regulate new, modified or renovated facilities. This is quite apparent given the explicit terms of the text of the statute.[10] Only the standards in effect at the time of the actual construction or modification of a facility are used to establish the requirements of construction for the design of those facilities. The specific question posed in this opinion request is whether revised standards may be used retroactively — in place of the original controlling standards — to regulate criminal detention facilities.
Retroactive application of minimum construction standards is not provided for under this Act. There are no statutory grounds within the Criminal Detention Minimum Standards that would allow for a retroactive application of the standards. To allow such a result where revised standards were used to regulate facilities constructed prior to the enactment of revised standards would be contrary to the explicit provisions found in § 83-4,128.
Section 83-4,128 provides for a conditional application of minimum physical plant standards. In order for the minimum construction standards to apply, the condition that must first occur is the renovation or modification of an existing facility or the construction of a new facility. Unless this condition occurs, which would trigger the application of a revised set of regulations, the standards used during the original construction or modification of the facility govern. The statute does not set up a condition allowing a reverse or retroactive application of the standards to occur.
Another question that arises is whether the Jail Standards Board may waive applicable minimum construction standards that existed at the time of a facility's construction or modification. This would result in either an absence of standards or the Jail Standards Board utilizing revised standards to regulate a criminal detention facility. With regard to the Board's ability to waive standards, we refer to our 1982 opinion that states, "[i]n our opinion the (Jail Standards) Board has no authority to grant waivers allowing criminal detention facilities in this state to be operated under conditions which do not meet or exceed established minimum standards."[11] This is consistent with statutory provisions that require the Board to take action if a criminal detention facility does not meet the minimum standards established by the Board,[12] and that provide, "a facility may be closed for any violation of the minimum standards."[13] No provisions within the Criminal Detention Minimum Standards Act permit a waiver to be granted by the Board in order to allow a political subdivision to circumvent minimum jail standards, or to allow one set of standards to be used in place of another.
The minimum construction standards are structured and designed to meet the minimum needs of the persons confined within criminal detention facilities. Each set of standards are designed based on the total area required to meet these minimum needs of inmates housed within jail facilities. The spacial area of an individual cell, recreational rooms and program rooms are designed relative to each other in determining the facility's appropriate population size. For example, if less space is provided to individual housing cells, the reduction in space can be compensated for by providing more area per person to recreational and living areas. This example helps to explain why each building specification comprising the standards are intended to be utilized together. To allow the Jail Standards Board to replace certain requirements with revised ones, while leaving other regulations intact, could result in a facility being constructed or modified with deficient minimum standards of construction contrary to the intent of the Act. Thus, each set of minimum construction standards must be applied as a whole set. The Board is inhibited from picking and choosing between portions of each set of standards that are less restrictive than another set of standards.
 CONCLUSION
Under the provisions found in § 83-4,128, minimum standards for construction used to regulate criminal detention facilities, apply only to new, modified or renovated facilities, where such facilities are designed and constructed during the time a set of minimum standards are in effect. Minimum construction standards subsequently adopted by the Jail Standards Board may not be used to regulate facilities that were in existence and unmodified prior to the enactment of the revised standards.
The Criminal Detention Minimum Standards Act does not provide a waiver mechanism by which the Jail Standards Board may forego the implementation of applicable standards in favor of applying revised standards to regulate a facility. Also, the Board may not waive a specific portion of a standard in order to allow a less restrictive standard to be used in its place because this may result in the failure of the overall required standard of minimum construction to be met.
Sincerely,
 Don Stenberg Attorney General
 Jason W. Hayes Assistant Attorney General
Approved:
DON STENBERG 
Attorney General
[1] Neb. Rev. Stat. § 83-4,124 (Reissue 1994).
[2] Neb. Rev. Stat. § 83-4,126.
[3] Neb. Rev. Stat. § 83-4,125(1).
[4] Neb. Rev. Stat. § 83-4,128.
[5] Title 81 N.A.C. Chapter 15, § 001.
[6] Title 81 N.A.C. Chapter 15, § 002.
[7] Title 81 N.A.C. Chapter 15, §§ 005, et. seq.
[8] Title 81 N.A.C. Chapter 15, § 002.02. "The Board and the Jail Standards Division retain the right to evaluate each new construction or renovation on an individual basis. The overall design and specifics will be worked out between the Jail Standards Division, local governing body, and the architect, subject to final approval by the Board."
[9] This result is based on the provisions contained in Neb. Rev. Stat. § 83-4,128 that enable minimum construction standards to apply to a facility once a modification of the structure has occurred.
[10] Rules of statutory interpretation are that, "a statute should be construed so that an ordinary person reading it would get from it the usual, accepted meaning." Adkisson v. Cityof Columbus, 214 Neb. 129, 133, 333 N.W.2d 661, 664 (1983).
[11] Op. Att'y Gen. No. 82-289 (December 10, 1982). 
[12] Neb. Rev. Stat. §§ 83-4,132 and 83-4,133 (Cum. Supp. 1998).
[13] Neb. Rev. Stat. § 83-4,134 (Reissue 1994).