Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/16/2023 09:05 AM CDT

BERNARD SCHAEFFER, APPELLANT, V. CRAIG GABLE,
WARDEN, TECUMSEH STATE CORRECTIONAL
INSTITUTION, AND SCOTT FRAKES,
DIRECTOR, NEBRASKA DEPARTMENT OF
CORRECTIONAL SERVICES, APPELLEES.

___ N.W.2d ___

Filed June 16, 2023.    No. S-22-605.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.
2. **Habeas Corpus: Appeal and Error.** On appeal of a habeas corpus petition, an appellate court reviews the trial court's factual findings for clear error and its conclusions of law de novo.
3. **Statutes: Appeal and Error.** The meaning and interpretation of statutes are questions of law for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.
4. **Courts: Jurisdiction.** Under the doctrine of jurisdictional priority, a subsequent court that decides a case already pending in another court with concurrent subject matter jurisdiction errs in the exercise of its jurisdiction. Jurisdictional priority is a matter of neither subject matter jurisdiction nor personal jurisdiction. The subsequent court does not lack judicial power over the general class or category to which the proceedings belong and the general subject involved in the action before the court.
5. **Habeas Corpus: Pleadings: Jurisdiction.** The failure to attach a copy of the relevant commitment order to a petition for a writ of habeas corpus does not prevent a court from exercising jurisdiction over that petition.
6. **Habeas Corpus.** A writ of habeas corpus is a statutory remedy in Nebraska that is available to those persons falling within the criteria

established by Neb. Rev. Stat. § 29-2801 (Reissue 2016), namely, those who are detained without having been convicted of a crime and committed for the same, those who are unlawfully deprived of their liberty, or those who are detained without any legal authority.

7. ____. A writ of habeas corpus under Neb. Rev. Stat. § 29-2801 (Reissue 2016) is generally available only when the release of the prisoner from the detention the prisoner attacks will follow as a result of a decision in the prisoner's favor.

8. **Sentences: Statutes: Time: Appeal and Error.** The good time law to be applied to a defendant's sentences is the law in effect at the time the defendant's convictions become final, and a defendant's convictions and sentences become final on the date that the appellate court enters its mandate concerning the defendant's appeal from the convictions and sentences.

Appeal from the District Court for Johnson County: Travis P. O'Gorman, Judge. Affirmed.

Gerald L. Soucie, of Soucie Law Office, for appellant.

Michael T. Hilgers, Attorney General, and James D. Smith for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ., and Srb, District Judge.

Miller-Lerman, J.

## NATURE OF CASE

Bernard Schaeffer appeals the order of the district court for Johnson County which denied his petition for a writ of habeas corpus. In its order on appeal, the district court stated that because another court had jurisdictional priority over the issues raised in the petition, it believed it lacked jurisdiction. Nevertheless, the district court proceeded to determine that even if it had jurisdiction, Schaeffer's petition failed on the merits. We determine that the district court had jurisdiction to determine the merits, and we affirm the district court's decision rejecting the petition on its merits.

STATEMENT OF FACTS

In 1977, the district court for Hall County sentenced Schaeffer to life imprisonment for his conviction for first degree murder. Schaeffer was 17 years old at the time of the offense. At the time of the sentencing, Schaeffer had been in prison since May 26, 1977, in connection with the murder charge. While serving the life sentence, Schaeffer was convicted and sentenced for additional felony charges. In 1979, Schaeffer was sentenced to imprisonment for 1 to 2 years for his conviction for assault, and in 1983, he was sentenced to imprisonment for an additional 12 to 40 years for two additional convictions for assault. The assaults in the 1979 and 1983 cases were committed while Schaeffer was in prison. Schaeffer was convicted and sentenced in the district court for Lancaster County in each assault case. In sentencing Schaeffer in each assault case, the court ordered that each sentence be served consecutively to his other sentences, and no credit for time served was applied to these sentences.

In 2016, Schaeffer was granted postconviction relief based on *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) (holding unconstitutional mandatory life sentence without parole for juveniles), and *State v. Mantich*, 287 Neb. 320, 842 N.W.2d 716 (2014) (holding that *Miller v. Alabama* was retroactive for defendants serving life sentence imposed for offense committed when defendant was juvenile). In the postconviction proceeding, Schaeffer remained convicted but the district court for Hall County vacated Schaeffer's life sentence. On January 3, 2017, the district court for Hall County resentenced Schaeffer to imprisonment for 70 to 90 years for the first degree murder conviction. The court granted 14,472 days' credit against this sentence for time served since Schaeffer's arrest on May 26, 1977.

On January 31, 2022, Schaeffer, who was incarcerated at the Tecumseh State Correctional Institution, filed a petition for a writ of habeas corpus in the district court for Johnson County. The dismissal of this petition gives rise to the instant

appeal. Schaeffer asserted that under relevant statutes, he had reached his mandatory discharge date on January 3, 2022, and he therefore moved for absolute discharge and release from custody.

The district court ordered the respondents, Craig Gable, warden at the Tecumseh State Correctional Institution, and Scott Frakes, director of the Nebraska Department of Correctional Services (DCS), to show cause why the writ should not be issued. In their show cause response, the respondents alleged that DCS had correctly determined Schaeffer's tentative mandatory release date to be October 21, 2043, and that therefore, Schaeffer was not currently eligible to be released from imprisonment. The respondents noted that Schaeffer recognized that the resentencing court had granted him credit against his sentence for the murder conviction for the entire time (14,472 days) since his arrest in 1977 until the date of resentencing. The respondents asserted that because all time served had been credited to the murder sentence, the sentences for Schaeffer's assault felonies remained to be served, and that the good time law in effect at the time those assault sentences were imposed applied to the sentences. They argued that by claiming that he had completed his sentences for the nonmurder felonies, Schaeffer was attempting to receive credit twice for the time served.

The respondents also asserted that the district court for Johnson County did not have jurisdiction over the matter "at this time" because Schaeffer had also previously filed an action in the district court for Lancaster County in which he challenged the calculation by DCS of his tentative mandatory release date. The respondents stated that the district court for Lancaster County had dismissed that action on October 22, 2021, but that Schaeffer's appeal from the dismissal was still pending. The respondents argued that the doctrine of "jurisdictional priority" applied because the action in the district court for Lancaster County had been filed first and that because the actions involved substantially the same subject matter,

proceedings on the present petition could not be commenced in the district court for Johnson County before the action in the district court for Lancaster County was resolved.

On August 10, 2022, the district court for Johnson County entered an order denying a writ of habeas corpus and dismissing Schaeffer's petition. The district court agreed with the argument of the respondents that the doctrine of jurisdictional priority applied, and it determined that the pendency of the proceedings in Lancaster County deprived it of jurisdiction in the present matter. The district court further determined that even if it had jurisdiction, Schaeffer's petition for a writ of habeas corpus failed on the merits. The court agreed with the argument of the respondents that Schaeffer was erroneously attempting to receive credit twice for time served. The court determined that DCS had correctly calculated Schaeffer's tentative mandatory release date and that Schaeffer was not currently eligible for release.

Schaeffer appeals the order of the district court that denied his petition for a writ of habeas corpus.

## ASSIGNMENTS OF ERROR

Schaeffer claims that the district court erred when it (1) dismissed his petition for a writ of habeas corpus as barred under the doctrine of jurisdictional priority and (2) denied his petition for a writ of habeas corpus on the merits.

## STANDARDS OF REVIEW

[1] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. *Ryan v. Ryan*, 313 Neb. 938, 987 N.W.2d 620 (2023).

[2] On appeal of a habeas corpus petition, an appellate court reviews the trial court's factual findings for clear error and its conclusions of law de novo. *Childs v. Frakes*, 312 Neb. 925, 981 N.W.2d 598 (2022).

[3] The meaning and interpretation of statutes are questions of law for which an appellate court has an obligation to

reach an independent conclusion irrespective of the decision made by the court below. *Id*.

## ANALYSIS

*District Court Did Not Lack Jurisdiction to Consider Merits of Schaeffer's Petition for Writ of Habeas Corpus, and We Do Not Lack Jurisdiction to Review District Court's Ruling on Merits.*

Schaeffer first claims that the court erred when it concluded that the pending proceedings in Lancaster County deprived it of jurisdiction. He generally argues that the doctrine of jurisdictional priority did not apply, because the relief of habeas corpus was not available to him until the date that he claims he should have been released and that on such date, the court in Lancaster County had already dismissed the proceedings in that county. In their brief as appellees, the respondents do not argue the issue regarding the district court's application of the doctrine of jurisdictional priority; instead, they argue that Schaeffer failed to comply with the statutory requirement to attach a copy of his commitment for the 1979 assault and that such failure was an alternative reason to affirm the dismissal of his petition for habeas corpus for lack of jurisdiction. We determine that neither the doctrine of jurisdictional priority nor Schaeffer's failure to attach the 1979 commitment order deprived the district court of jurisdiction to consider the merits of Schaeffer's petition for habeas corpus.

Although it determined it lacked jurisdiction, as we have noted, the district court proceeded to consider the merits of Schaeffer's claim and concluded that even if it had jurisdiction, Schaeffer's claim failed on the merits. Before proceeding to analyze the merits of Schaeffer's claims, we must determine whether the district court had jurisdiction to rule on the merits, because if it lacked jurisdiction, it could not rule on the substance of the petition, and if the district court lacked jurisdiction to determine the merits, we consequently lack jurisdiction to review its ruling on the merits. See *State ex*

*rel. Malone v. Baldonado-Bellamy*, 307 Neb. 549, 950 N.W.2d 81 (2020) (stating that when trial court lacks jurisdiction to adjudicate merits of claim, appellate court also lacks power to determine merits of claim presented to lower court).

[4] Regarding jurisdictional priority, the district court determined that it lacked jurisdiction over Schaeffer's petition for habeas corpus based on the doctrine of jurisdictional priority due to the pendency of Schaeffer's action in the district court for Lancaster County. We addressed the nature of the doctrine of jurisdictional priority in *Charleen J. v. Blake O.*, 289 Neb. 454, 462-63, 855 N.W.2d 587, 595 (2014), in which we stated:

> Some confusion has developed from our failure to always distinguish the improper exercise of jurisdiction under judicial comity from a lack of subject matter jurisdiction. We have sometimes said, under the doctrine of jurisdictional priority, that a second court lacks "jurisdiction." We mean that a subsequent court that decides a case already pending in another court with concurrent subject matter jurisdiction errs in the *exercise* of its jurisdiction. Jurisdictional priority is neither a matter of subject matter jurisdiction nor personal jurisdiction. The subsequent court does not lack judicial *power* over the general class or category to which the proceedings belong and the general subject involved in the action before the court.

Therefore, even if this would have been an appropriate case for the district court for Johnson County to exercise the doctrine of jurisdictional priority and refrain from deciding the merits of Schaeffer's petition for a writ of habeas corpus, a failure to have refrained and to have proceeded to the merits would merely have been an improper exercise of jurisdiction rather than a decision made without jurisdiction.

Schaeffer generally argues that because the cases are distinguishable, the case in Lancaster County did not have jurisdictional priority. Schaeffer states that the present habeas

corpus case could not have been filed before his alleged mandatory release date of January 3, 2022, whereas the earlier-filed Lancaster County case challenged DCS' prospective calculation of his tentative mandatory release date. That is, the Lancaster County case was not a claim that he was currently being imprisoned without legal authority. Schaeffer also notes that the district court for Lancaster County dismissed its case on October 22, 2021, prior to the date Schaeffer filed this petition for a writ of habeas corpus. However, as Schaeffer acknowledges, an appeal of the Lancaster County case was still pending at the time he filed his petition for a writ of habeas corpus. We filed our opinion affirming the dismissal of the Lancaster County case on January 27, 2023. *Schaeffer v. Frakes*, 313 Neb. 337, 984 N.W.2d 290 (2023) (motion for rehearing denied on May 10, 2023).

Because we have affirmed the dismissal of the Lancaster County action and that action is no longer pending, there is no reason of judicial comity for this court to avoid reviewing the district court's ruling on the merits in this habeas corpus case. Therefore, whether as a matter of judicial comity, the district court should have refrained from ruling on the merits of Schaeffer's claim, the district court did not lack jurisdiction to consider the merits based on jurisdictional priority, and we do not lack appellate jurisdiction to review its eventual determination on the merits.

In urging us to affirm the order of the district court, as noted above, the respondents do not rely on jurisdictional priority as a reason the district court lacked jurisdiction to consider Schaeffer's petition for a writ of habeas corpus. Instead, the respondents note that Schaeffer did not attach a copy of the sentencing commitment relating to his 1979 conviction for felony assault to the petition. They argue that Neb. Rev. Stat. § 29-2801 (Reissue 2016) requires attachment of the commitment order and that Schaeffer's failure to attach the commitment order deprived the district court of jurisdiction and justified denial of the petition.

[5] In *O'Neal v. State*, 290 Neb. 943, 951, 863 N.W.2d 162, 169 (2015), we held that "failure to attach a copy of the relevant commitment order to a petition for a writ of habeas corpus does not prevent a court from exercising jurisdiction over that petition." We recognized in *O'Neal* that we were not considering whether there were "nonjurisdictional consequences to failing to attach a copy of the relevant commitment." *Id.* In this case, the respondents argue only that the failure to attach the commitment deprived the district court of jurisdiction to consider Schaeffer's petition for a writ of habeas corpus. As in *O'Neal*, we conclude that failure to attach the commitment order did not deprive the district court of jurisdiction.

Neither jurisdictional priority nor failure to attach the commitment order deprived the district court of jurisdiction to consider the merits of Schaeffer's petition for habeas corpus. Therefore, the district court's ruling on the merits was made with jurisdiction and we have jurisdiction to review the ruling.

*District Court Did Not Err When*
*It Denied Petition for Writ of*
*Habeas Corpus on Merits.*

Turning to the substance of this appeal, Schaeffer claims the district court erred when it determined that Schaeffer's petition for a writ of habeas corpus failed on the merits. The district court determined that Schaeffer's claim that his mandatory release date was January 3, 2022, failed because Schaeffer was attempting to get credit twice for the time he had served. While this determination is part of the relevant analysis, we find it necessary to make a more comprehensive review of the determination of Schaeffer's release date under the appropriate statutes, and following our review, we conclude that Schaeffer's claim for habeas corpus relief was without merit.

[6] A writ of habeas corpus is a statutory remedy in Nebraska that is available to those persons falling within

the criteria established by § 29-2801, namely, those who are detained without having been convicted of a crime and committed for the same, those who are unlawfully deprived of their liberty, or those who are detained without any legal authority. *Johnson v. Gage*, 290 Neb. 136, 858 N.W.2d 837 (2015). Schaeffer generally alleged in his petition that he was being detained without any legal authority, because he was past the date on which, under Neb. Rev. Stat. § 83-1,118 (Cum. Supp. 2022), DCS was required to discharge him from its custody because his "'time served in the facility equal[ed] the maximum term less good time.'" Section 83-1,118(3) provides that DCS "shall discharge a committed offender from the custody of the department when the time served in the facility equals the maximum term less good time."

[7] We have noted that § 29-2801 speaks in terms of present detention and that therefore, a writ of habeas corpus under § 29-2801 is generally available only when the release of the prisoner from the detention the prisoner attacks will follow as a result of a decision in the prisoner's favor. See *id*. In *Johnson v. Gage*, we determined that even if the court agreed with the prisoner's claim that he had completed his Nebraska sentences, the prisoner would not be entitled to immediate release because he would still be legally detained pursuant to a sentence from another state; we stated that the relief the prisoner sought was more in the way of a declaration that at some point in the future, it would be illegal to detain him, and that such a possibility of future illegal detention is not the proper basis for a writ of habeas corpus.

By contrast to *Johnson v. Gage*, in the present case, Schaeffer claimed that if DCS had determined the application of good time to his sentence as he urges, his mandatory release date would have been January 3, 2022. Therefore, if the court agreed with Schaeffer's claim, he would have been entitled to immediate release at the time he filed his petition for a writ of habeas corpus on January 31. Although we conclude below that Schaeffer is not entitled to immediate release, we

believe the allegations in his petition were properly brought in a petition for a writ of habeas corpus.

When considering the merits of Schaeffer's claim, the district court determined the claim lacked merit because Schaeffer was "erroneously attempting to receive credit twice for time served[,] which is expressly precluded by law," and because the sentences for Schaeffer's "three additional felonies remain to be fully served." Based on these determinations, the court concluded that DCS "correctly determined [Schaeffer's] tentative mandatory release date is October 21, 2042," and that therefore, Schaeffer was "not currently eligible to be released from prison as a matter of law." We note that the district court in its order stated the tentative release date as being in 2042. However, the DCS determination that is in the record shows a date in 2043. In any event, for purposes of Schaeffer's habeas petition, the relevant determination is that Schaeffer had not yet reached his mandatory release date.

We agree with the district court that one of the flaws in Schaeffer's claim that his mandatory release should have been January 3, 2022, is that such release would require DCS to credit the same increment of time served against both his murder sentence and his felony assault sentences, which were all ordered to be served consecutively. However, a more comprehensive consideration of DCS' determination of Schaeffer's tentative release date and how it differed from Schaeffer's own determination of his mandatory release date is necessary to support the district court's finding that DCS correctly calculated Schaeffer's tentative mandatory release date.

In their response to the show cause order, the respondents attached a document showing how DCS determined that Schaeffer's tentative release date was October 21, 2043. After the resentencing on the murder conviction on January 3, 2017, DCS calculated Schaeffer's tentative release date by aggregating the maximum sentence for the murder conviction and the maximum sentences for the three assault convictions Schaeffer received in 1979 and 1983 and applying good time

based on 1975 Neb. Laws, L.B. 567, the good time law in effect when Schaeffer was sentenced for the assaults in 1979 and 1983.

In his petition, Schaeffer asserted that he had reached his mandatory release date on January 3, 2022. He determined this date based on the premise that he had completed his three assault sentences prior to the resentencing on the murder conviction in 2017. Schaeffer therefore included only the murder sentence in his release determination, and he applied good time based on 2011 Neb. Laws, L.B. 191, the good time law in effect when he was resentenced in January 2017. This calculation was erroneous.

The determination of Schaeffer's tentative release date by DCS and the determination of Schaeffer's mandatory release date by Schaeffer differed in two significant respects: (1) whether the four sentences Schaeffer received from the time of his initial incarceration in 1977 through 2017 should be aggregated or whether only the murder sentence should be included in the determination and (2) whether the L.B. 567 version of good time law applies or whether the L.B. 191 version of good time law applies. As set forth below, we determine that DCS was correct when it aggregated the four sentences and when it applied the L.B. 567 version of the good time law in effect when the first sentence, i.e., that for the 1979 assault, became final.

Before addressing the issues more precisely, we note that the calculation of Schaeffer's tentative release by DCS is necessarily a function of sentences that were imposed and, more specifically, that DCS' authority to detain Schaeffer derived from court-ordered sentences that Schaeffer had received at the time DCS made its determination. Therefore, after the resentencing in January 2017, DCS needed to look to the court-ordered sentences that Schaeffer had received since Schaeffer's detention began in 1977. Schaeffer had received four final sentences since 1977—the first assault sentence in 1979, the two additional assault sentences in 1983, and

the murder resentencing in 2017. DCS' authority to detain Schaeffer arose from those court-ordered sentences, and therefore, DCS needed to determine Schaeffer's tentative release date based on those orders.

In the 2017 resentencing order, the district court credited 14,472 days—representing the time Schaeffer had been in detention since 1977 until his 2017 resentencing—against the murder sentence. Therefore, DCS has before it four sentences, with credit against one of those sentences for time served since 1977. Part of Schaeffer's argument is that DCS should have treated some of that time as having been spent serving the assault sentences. However, under the relevant statutes, DCS does not have authority to determine how time served is to be credited and instead must follow court orders crediting such time.

The crediting of time served is governed by Neb. Rev. Stat. § 83-1,106 (Reissue 2014), which provides in relevant part as follows:

(1) Credit against the maximum term and any minimum term shall be given to an offender for time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. This shall specifically include, but shall not be limited to, time spent in custody prior to trial, during trial, pending sentence, pending the resolution of an appeal, and prior to delivery of the offender to the custody of [DCS], the county board of corrections, or, in counties which do not have a county board of corrections, the county sheriff.

. . . .

(3) If an offender is serving consecutive or concurrent sentences, or both, and if one of the sentences is set aside as the result of a direct or collateral proceeding, credit against the maximum term and any minimum term of the remaining sentences shall be given for all time

served since the commission of the offenses on which the sentences set aside were based.

. . . .

(5) Credit for time served shall only be given in accordance with the procedure specified in this subsection:

(a) Credit to an offender who is eligible therefor under subsections (1), (2), and (4) of this section shall be set forth as a part of the sentence; or

(b) Credit to an offender who is eligible therefor under subsection (3) of this section shall only be given by the court in which such sentence was set aside by entering such credit in the final order setting aside such sentence.

Subsection (5) of § 83-1,106 provides that credit for time served is to be given only in accordance with the procedures set forth in the subsection, and it provides two scenarios under which such credit is given: subsection (5)(a) "as a part of the sentence" or subsection (5)(b) when a sentence is set aside and time served against that sentence is credited against remaining sentences, "by the court in which such sentence was set aside by entering such credit in the final order setting aside such sentence." Thus, the statute is clear that the credit for time served is given by a court, either when imposing a sentence or when vacating a sentence and applying time served on that sentence to remaining sentences. The statute does not authorize DCS to elect the sentence to which time served should be credited when it is determining a prisoner's tentative release date. See, also, *Gochenour v. Bolin*, 208 Neb. 444, 303 N.W.2d 775 (1981) (stating that DCS had neither statutory authority nor inherent authority to interrupt one sentence for purpose of serving consecutive sentence).

Schaeffer argues in part that the resentencing court in 2017 may have improperly credited the entire time against the murder sentence but that such error cannot now be corrected because the State did not appeal it. But he also argues that some of that time should be treated as credited against the assault sentences. Schaeffer's argument appears to ignore

§ 83-1,106(3) and (5). If under subsection (3), any time served after Schaeffer's arrest for the murder in 1977 was to be transferred to the 1979 and 1983 assault sentences, then under subsection (5), it should have been done in the order resulting from the grant of postconviction relief in 2016. The record does not indicate that when the postconviction court vacated Schaeffer's life sentence for the murder, it credited any time served on the life sentence against the 1979 and 1983 assault sentences; nor does the record indicate that Schaeffer appealed the postconviction resentencing order to argue that credit for time served on the vacated life sentence for murder should be transferred to his 1979 and 1983 assault sentences. Therefore, when determining Schaeffer's tentative release date after the 2017 resentencing, DCS could only consider the court's resentencing order that credited time served since 1977 against the murder sentence.

Schaeffer's determination of a mandatory release date is based in part on crediting time he served prior to the resentencing both against his assault sentences and against the murder sentence he received as a result of the resentencing. Because the assault sentences were ordered to be served consecutively to other sentences and because the resentencing court credited all time served against the murder sentence, the district court in the present habeas corpus case was correct to state that Schaeffer erroneously attempted to receive credit twice for the same time served. However, as we noted above, a complete analysis of whether DCS correctly determined Schaeffer's tentative release date requires additional considerations, and we turn now to reviewing those issues.

DCS aggregated the maximum terms of Schaeffer's four sentences as part of its determination of Schaeffer's tentative release date. Neb. Rev. Stat. § 83-1,110(2) (Reissue 2014) provides, with respect to "[e]very committed offender sentenced to consecutive terms, whether received at the same time or at any time during the original sentence," that "[t]he maximum terms shall be added to compute the new maximum

term which, less good time, shall determine the date when discharge from the custody of the state becomes mandatory." This portion of § 83-1,110, with some minor variation in wording, was part of the statute at the time of Schaeffer's murder conviction in 1977, his assault convictions and sentencings in 1979 and 1983, and his murder resentencing in 2017.

As discussed above, when determining a tentative release date for Schaeffer after the resentencing in 2017, DCS needed to consider all four sentences Schaeffer received since his initial detention in 1977, because the court granted the credit for time served since 1977 against the murder sentence, and therefore, no time had been credited against the assault sentences that were ordered to be served consecutively to other sentences. Therefore, under § 83-1,110(2), when determining the tentative date on which Schaeffer's discharge from custody would become mandatory, DCS was required to add the maximum terms for the four sentences together to compute a new maximum term against which good time would be applied. Therefore, we determine that DCS correctly aggregated the four sentences and that Schaeffer's determination of his mandatory release date was erroneous in part because he included the maximum term for only his murder sentence.

After adding the maximum terms together to compute a new maximum term, the next step to determine the mandatory discharge date is to reduce that maximum for good time. Because the statutes governing good time have been amended over time and the good time law in effect when Schaeffer was resentenced in 2017 differed from the good time law in effect when Schaeffer was originally sentenced for murder in 1977 and when he was sentenced for the assaults in 1979 and 1983, it is necessary to determine which version of the good time law should be applied to Schaeffer's aggregated maximum term.

In his determination of his mandatory release date, Schaeffer applied the L.B. 191 version of good time law on the basis that it was the version that was in effect at the

time he was resentenced for the murder in 2017. Because the murder sentence was the only sentence Schaeffer included in his determination, he asserted that this court's decisions in *State v. Smith*, 295 Neb. 957, 892 N.W.2d 52 (2017), and *State v. Nollen*, 296 Neb. 94, 892 N.W.2d 81 (2017), required application of the L.B. 191 version. However, these cases are distinguishable.

[8] Both *Smith* and *Nollen* involved defendants whose original life sentences for murder were vacated based on *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), and who were resentenced to imprisonment for terms of years. At issue in both cases was which version of good time law should apply to the defendant's sentence—the version in effect at the time of the original but now void sentencing or the version in effect at the time of the resentencing. We determined in *Smith* and *Nollen* that the original sentences were unconstitutional and void under *Miller v. Alabama* and that therefore, the defendants did not have final sentences until they were resentenced. We cited *State v. Schrein*, 247 Neb. 256, 526 N.W.2d 420 (1995), for the propositions that the good time law to be applied to a defendant's sentences is the law in effect at the time the defendant's convictions become final and that a defendant's convictions and sentences become final on the date that the appellate court enters its mandate concerning the defendant's appeal from the convictions and sentences. We therefore concluded that the good time law to be applied in *Smith* and *Nollen* was that in effect at the time that the resentencing and any appeal from the resentencing were completed. Schaeffer therefore asserted that based on our holdings in *Smith* and *Nollen*, the L.B. 191 version of good time law, which was in effect when he was resentenced in 2017, applied to his murder sentence.

However, Schaeffer's determination of his mandatory release date ignores the consecutive feature of the assault sentences and is based on his erroneous contention that only his murder sentence is still to be served. As we determined

above, the maximums of all four of Schaeffer's sentences are to be added to determine a new maximum term against which the applicable good time law should be applied. Neither *Smith* nor *Nollen* involved consecutive sentences that were to be aggregated pursuant to § 83-1,110. As noted above, our holdings in *Smith* and *Nollen* relied on *State v. Schrein, supra*. *Schrein* also did not involve consecutive sentences that needed to be aggregated for purposes of applying good time law. In *Schrein*, we distinguished the facts of that case from our decision in *Boston v. Black*, 215 Neb. 701, 340 N.W.2d 401 (1983), which we described in *State v. Schrein*, 247 Neb. at 258, 526 N.W.2d at 421, as involving an issue regarding "which good time law applied to those persons who were serving consolidated sentences." We note that when it determined Schaeffer's tentative release date, DCS cited to *Boston* for its application of L.B. 567 good time law to Schaeffer's aggregate sentence.

In *Boston*, we cited § 83-1,110 and described it as defining "an offender's sentence, for the purpose of good time computations, to be the sum of all sentences [the offender] receives, regardless of when incurred," and based on this requirement of § 83-1,110, we stated that "[t]he date of an offender's initial incarceration is the date on which service of such consolidated sentence is deemed to begin." 215 Neb. at 709-10, 340 N.W.2d at 407. We further determined that the good time law to apply to such a consolidated, or aggregated, sentence is that in effect at the date of the "initial incarceration." In *Boston*, we rejected due process and equal protection challenges to application of the earlier good time law to sentences that were part of the aggregate sentence but that were received after a change had been made to the good time law. We also reasoned that applying legislative amendments to good time law to previously imposed sentences implicated separation of powers concerns relating to pardon authority.

In the present case, we must reconcile the holdings in *Smith* and *Nollen*, which were similar to the present case in that

they involved resentencing, with the holding in *Boston*, which was similar to the present case in that it involved an aggregate of sentences received both before and after a change in good time law. Based on *Smith* and *Nollen*, Schaeffer's murder sentence did not become final until the 2017 resentencing that occurred when the L.B. 191 version of good time law was in effect. Under § 83-1,110, Schaeffer's murder sentence must be added with his assault sentences that became final in 1979 and 1983 to determine an aggregate maximum sentence. Under *Boston*, the good time law applied to an aggregate sentence is the version in effect at the time of the offender's "initial incarceration," which would generally relate to the first sentence imposed. The issue in this case is what good time law applies when the first sentence in the aggregate is vacated as unconstitutional and void and then resentencing for the first conviction occurs after the subsequent sentences that form part of the aggregate.

Resolving *Boston* and its reference to the offender's "initial incarceration" in accord with *Schrein* and its holding that good time law is determined when a sentence becomes final, we read the "initial incarceration" under *Boston* to be the time when the defendant is incarcerated and is being detained pursuant to a final sentence. In the context of an aggregate sentence, therefore, we read the time of the initial incarceration to be the time when the first of the aggregated sentences becomes final.

In the present case, because of the resentencing, Schaeffer's murder sentence became final after the resentencing in 2017 rather than at the time of the original sentencing in 1977. However, Schaeffer's sentence for the first assault became final in 1979 and his sentences for the two additional assaults became final in 1983. Applying our understanding of the "initial incarceration" under *Boston* as set forth above, Schaeffer's "initial incarceration" for purposes of applying good time law to his aggregate sentence occurred when the sentence for the first assault became final in 1979. Therefore, the good

time law under L.B. 567 that was in effect in 1979 should be applied to determine the good time law applied to Schaeffer's aggregate sentence to determine his mandatory release date. We therefore conclude that DCS was correct when it applied the L.B. 567 version of good time law to Schaeffer's aggregate sentence, and we reject Schaeffer's application of the L.B. 191 version of good time law.

Summarizing our analysis, we determine DCS applied the correct procedures when it determined Schaeffer's tentative release date, by aggregating the four sentences and applying the L.B. 567 version of good time law that was in effect when the first of the aggregated consecutive sentences became final in 1979. Schaeffer's claim for a writ of habeas corpus failed to show that he was entitled to immediate discharge at the time he filed his petition. Schaeffer did not set forth sufficient facts to support his claim for a writ of habeas corpus, and we conclude that the district court did not err when it determined that Schaeffer's claim failed on the merits and when it dismissed Schaeffer's petition.

## CONCLUSION

We conclude that the district court had jurisdiction to consider the merits of Schaeffer's petition for a writ of habeas corpus and that therefore, we have jurisdiction to review the district court's ruling on the merits. We further conclude that the district court did not err when it determined that Schaeffer's claim for habeas corpus relief was without merit. We therefore affirm the district court's order.

AFFIRMED.

FREUDENBERG, J., not participating.